**BENSUSAN RESTAURANT CORPORATION, Plaintiff–Appellant,**

v.

**Richard B. KING, Individually and doing business as The Blue Note, Defendant–Appellee.**

No. 1383, Docket 96–9344.

United States Court of Appeals, Second Circuit.

Argued April 9, 1997.

Decided Sept. 10, 1997.

Dorothy M. Weber, New York City (Judith A. Kaminsky, Shukat Arrow Hafer & Weber, New York City, of counsel), for Plaintiff–Appellant.

Kerry L. Konrad, New York City (Robert A. Bourque, Lori E. Lesser, Simpson Thacher & Bartlett, New York City, of counsel), for Defendant–Appellee.

Before: VAN GRAAFEILAND, WALKER and LEVAL, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Bensusan Restaurant Corporation, located in New York City, appeals from a judgment of the United States District Court for the Southern District of New York (Stein, J.) dismissing its complaint against Richard B. King, a Missouri resident, pursuant to Fed. R.Civ.P. 12(b)(2) for lack of personal jurisdiction. We affirm.

Columbia, Missouri is a small to medium size city far distant both physically and substantively from Manhattan. It is principally a white-collar community, hosting among other institutions Stephens College, Columbia College and the University of Missouri. It would appear to be an ideal location for a small cabaret featuring live entertainment, and King, a Columbia resident, undoubtedly found this to be so. Since 1980, he has operated such a club under the name "The Blue Note" at 17 North Ninth Street in Columbia.

Plaintiff alleges in its complaint that it is "the creator of an enormously successful jazz club in New York City called 'The Blue Note,'" which name "was registered as a federal trademark for cabaret services on May 14, 1985." Around 1993, a Bensusan representative wrote to King demanding that he cease and desist from calling his club The Blue Note. King's attorney informed the

writer that Bensusan had no legal right to make the demand.

Nothing further was heard from Bensusan until April 1996, when King, at the suggestion of a local web-site design company, ThoughtPort Authority, Inc., permitted that company to create a web-site or cyberspot on the internet for King's cabaret. This work was done in Missouri. Bensusan then brought the instant action in the Southern District of New York, alleging violations of sections 32(1) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1) & 1125(a), and section 3(c) of the Federal Trademark Dilution Act of 1995, 15 U.S.C. § 1125(c), as well as common law unfair competition.

In addition to seeking trebled compensatory damages, punitive damages, costs and attorney's fees, Bensusan requests that King be enjoined from:

> using the mark "The Blue Note", or any other indicia of the Blue Note in any manner likely to cause confusion, or to cause mistake, or to deceive, or from otherwise representing to the public in any way that [King's club] is in any way sponsored, endorsed, approved, or authorized by, or affiliated or connected with, Plaintiff or its CABARET, by means of using any name, trademark, or service mark of Plaintiff or any other names whatsoever, including but not limited to removal of Defendant's website. . . .

The web-site describes King's establishment as "Mid–Missouri's finest live entertainment venue, . . . [l]ocated in beautiful Columbia, Missouri," and it contains monthly calendars of future events and the Missouri telephone number of King's box office. Initially, it contained the following text:

> The Blue Note's CyberSpot should not be confused with one of the world's finest jazz club Blue Note, located in the heart of New York's Greenwich Village. If you should ever find yourself in the big apple give them a visit.

This text was followed by a hyperlink[1] that could be used to connect a reader's computer to a web-site maintained by Bensusan. When Bensusan objected to the above-quoted language, King reworded the disclaimer and removed the hyperlink, substituting the following disclaimer that continues in use:

> The Blue Note, Columbia, Missouri should not be confused in any way, shape, or form with Blue Note Records or the jazz club, Blue Note, located in New York. The CyberSpot is created to provide information for Columbia, Missouri area individuals only, any other assumptions are purely coincidental.

The district court dismissed the complaint in a scholarly opinion that was published in 937 F.Supp. 295 (1996). Although we realize that attempting to apply established trademark law in the fast-developing world of the internet is somewhat like trying to board a moving bus, we believe that well-established doctrines of personal jurisdiction law support the result reached by the district court.

■ In diversity or federal question cases the court must look first to the long-arm statute of the forum state, in this instance, New York. *PDK Labs, Inc. v. Friedlander,* 103 F.3d 1105, 1108 (2d Cir.1997). If the exercise of jurisdiction is appropriate under that statute, the court then must decide whether such exercise comports with the requisites of due process. *See Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 567 (2d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 508, 136 L.Ed.2d 398 (1996). Because we believe that the exercise of personal jurisdiction in the instant case is proscribed by the law of New York, we do not address the issue of due process.

■ The New York law dealing with personal jurisdiction based upon tortious acts of a non-domiciliary who does not transact business in New York is contained in sub-paragraphs (a)(2) and (a)(3) of CPLR § 302, and Bensusan claims jurisdiction with some degree of inconsistency under both sub-paragraphs. Because King does not transact business in New York State, Bensusan

---

1. A hyperlink is "highlighted text or images that, when selected by the user, permit him to view another, related Web document." *Shea v. Reno,* 930 F.Supp. 916, 929 (S.D.N.Y.1996) (three-judge court), *aff'd,* —— U.S. ——, 117 S.Ct. 2501, 138 L.Ed.2d 1006 (1997).

makes no claim under section 302(a)(1). The legislative intent behind the enactment of sub-paragraphs (a)(2) and (a)(3) best can be gleaned by reviewing their disparate backgrounds. Sub-paragraph (a)(2), enacted in 1962, provides in pertinent part that a New York court may exercise personal jurisdiction over a non-domiciliary who "in person or though an agent" commits a tortious act within the state. The New York Court of Appeals has construed this provision in several cases. In *Feathers v. McLucas*, 15 N.Y.2d 443, 458, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965), the Court held that the language "commits a tortious act *within* the state," as contained in sub-paragraph (a)(2), is "plain and precise" and confers personal jurisdiction over non-residents *"when they commit acts within the state."* *Id.* at 460, 261 N.Y.S.2d 8, 209 N.E.2d 68 (internal quotation marks omitted). *Feathers* adopted the view that CPLR § 302(a)(2) reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act. The official Practice Commentary to CPLR § 302 explains that "if a New Jersey domiciliary were to lob a bazooka shell across the Hudson River at Grant's tomb, Feathers would appear to bar the New York courts from asserting personal jurisdiction over the New Jersey domiciliary in an action by an injured New York plaintiff." C302:17. The comment goes on to conclude that:

> As construed by the *Feathers* decision, jurisdiction cannot be asserted over a nonresident under this provision unless the nonresident commits an *act* in this state. This is tantamount to a requirement that the defendant or his agent be physically present in New York.... In short, the failure to perform a duty in New York is not a tortious act in this state, under the cases, unless the defendant or his agent enters the state.

The Court of Appeals adhered to the *Feathers* holding in *Kramer v. Vogl*, 17 N.Y.2d 27, 31, 267 N.Y.S.2d 900, 215 N.E.2d 159 (1966), and again in *Platt Corp. v. Platt*, 17 N.Y.2d 234, 237, 270 N.Y.S.2d 408, 217 N.E.2d 134 (1966), where it said:

> The failure of a man to do anything at all when he is physically in one State is not

an "act" done or "committed" in another State. His decision not to act and his not acting are both personal events occurring in the physical situs. That they may have consequences elsewhere does not alter their personal localization as acts.

*See also Ferrante Equip. Co. v. Lasker-Goldman Corp.*, 26 N.Y.2d 280, 285, 309 N.Y.S.2d 913, 258 N.E.2d 202 (1970).

In *Harvey v. Chemie Grunenthal, G.m.b.H*, 354 F.2d 428, 431 (2d Cir.1965), *cert. denied*, 384 U.S. 1001, 86 S.Ct. 1923, 16 L.Ed.2d 1015 (1966), we held that this construction of sub-paragraph (a)(2) should be followed. Numerous lower courts, both state and federal, have arrived at the same conclusion. *See Beckett v. Prudential Ins. Co.*, 893 F.Supp. 234, 239 (S.D.N.Y.1995); *Kinetic Instruments, Inc. v. Lares*, 802 F.Supp. 976, 982–83 (S.D.N.Y.1992); *Department of Economic Dev. v. Arthur Andersen & Co.*, 747 F.Supp. 922, 929 (S.D.N.Y.1990); *Van Essche v. Leroy*, 692 F.Supp. 320, 324 (S.D.N.Y. 1988); *Rolls–Royce Motors, Inc. v. Charles Schmitt & Co.*, 657 F.Supp. 1040, 1052–53 (S.D.N.Y.1987); *Bulk Oil (USA) Inc. v. Sun Oil Trading Co.*, 584 F.Supp. 36, 40–41 (S.D.N.Y.1983); *Paul v. Premier Elec. Constr. Co.*, 576 F.Supp. 384, 389 (S.D.N.Y. 1983); *Bialek v. Racal–Milgo, Inc.*, 545 F.Supp. 25, 35 (S.D.N.Y.1982); *Selman v. Harvard Medical Sch.*, 494 F.Supp. 603, 612–13 (S.D.N.Y.), *aff'd mem.*, 636 F.2d 1204 (2d Cir.1980); *Marine Midland Bank v. Keplinger & Assocs., Inc.*, 488 F.Supp. 699 (S.D.N.Y.1980); *Lynn v. Cohen*, 359 F.Supp. 565, 568 (S.D.N.Y.1973); *Bauer Indus. Inc. v. Shannon Luminous Materials Co.*, 52 A.D.2d 897, 897–98 (2d Dep't 1976) (mem.); *Glucoft v. Northside Sav. Bank*, 86 Misc.2d 1007, 1008–09, 382 N.Y.S.2d 690 (N.Y.Civ.Ct. 1976); *Gluck v. Fasig Tipton Co.*, 63 Misc.2d 82, 84, 310 N.Y.S.2d 809 (N.Y.Sup.Ct.1970); *Balogh v. Rayner–Smith*, 51 Misc.2d 1089, 1092, 274 N.Y.S.2d 920 (N.Y.Sup.Ct.1966).

In 1990, Judge McLaughlin, who wrote the above-quoted commentary on section 302(a)(2), further evidenced his belief that the commentary correctly interpreted the statute when he quoted its substance in *Twine v. Levy*, 746 F.Supp. 1202, 1206 (E.D.N.Y.1990). As recently as 1996, another of our district judges flatly stated:

To subject non-residents to New York jurisdiction under § 302(a)(2) the defendant must commit the tort while he or she is physically in New York State.

*Carlson v. Cuevas,* 932 F.Supp. 76, 80 (S.D.N.Y.1996)(Baer, J.).

Like the district court in *Bulk Oil, supra,* 584 F.Supp. at 41, we recognize that the interpretation of sub-paragraph (a)(2) in the line of cases above cited has not been adopted by every district judge in the Second Circuit. However, the judges who differ are in the minority. In the absence of some indication by the New York Court of Appeals that its decisions in *Feathers* and *Platt,* as interpreted and construed in the above-cited majority of cases, no longer represent the law of New York, we believe it would be impolitic for this Court to hold otherwise. Applying these principles, we conclude that Bensusan has failed to allege that King or his agents committed a tortious act in New York as required for exercise of personal jurisdiction under CPLR § 302(a)(2). The acts giving rise to Bensusan's lawsuit—including the authorization and creation of King's web site, the use of the words "Blue Note" and the Blue Note logo on the site, and the creation of a hyperlink to Bensusan's web site—were performed by persons physically present in Missouri and not in New York. Even if Bensusan suffered injury in New York, that does not establish a tortious act in the state of New York within the meaning of § 302(a)(2). *See Feathers,* 15 N.Y.2d at 460, 261 N.Y.S.2d 8, 209 N.E.2d 68.

■ Bensusan's claims under sub-paragraph (a)(3) can be quickly disposed of. Sub-paragraph (a)(2) left a substantial gap in New York's possible exercise of jurisdiction over non-residents because it did not cover the tort of a non-resident that took place outside of New York but caused injury inside the state. Accordingly, in 1966 the New York Legislature enacted sub-paragraph (a)(3), which provides in pertinent part that New York courts may exercise jurisdiction over a non-domiciliary who commits a tortious act without the state, causing injury to person or property within the state. However, once again the Legislature limited its exercise of jurisdictional largess. Insofar as is pertinent herein it restricted the exercise of jurisdiction under sub-paragraph (a)(3) to persons who expect or should reasonably expect the tortious act to have consequences in the state and in addition derive substantial revenue from interstate commerce. To satisfy the latter requirement, Bensusan relies on the arguments that King participated in interstate commerce by hiring bands of national stature and received revenue from customers—students of the University of Missouri—who, while residing in Missouri, were domiciliaries of other states. These alleged facts were not sufficient to establish that substantial revenues were derived from interstate commerce, a requirement that "is intended to exclude non-domiciliaries whose business operations are of a local character." Report of the Administrative Board of the Judicial Conference of the State of New York for the Judicial Year July 1, 1965 through June 30, 1966, Legislative Document (1967) No. 90. *See United Bank of Kuwait v. James M. Bridges, Ltd.,* 766 F.Supp. 113, 117–18 (S.D.N.Y.1991); *Markham v. Gray,* 393 F.Supp. 163, 166 (W.D.N.Y.1975). King's "Blue Note" cafe was unquestionably a local operation.

For all the reasons above stated, we affirm the judgment of the district court.