LEVISOHN, LERNER, BERGER & LANGSAM, Plaintiff,

v.

MEDICAL TAPING SYSTEMS, INC., Nellcor Puritan Bennett, Inc., Stephen Solenberger, G. Booker Schmidt, Roland B. Desilets, Jr., Diane O. Mann, K.C. Craichy, Monica F. Craichy, Maynard Ramsey, M.D. and David G. Shell, Defendants.

No. 98 Civ. 0087(WCC).

United States District Court, S.D. New York.

June 19, 1998.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

In this diversity action, plaintiff Levisohn, Lerner, Berger & Langsam ("LLBL"), a New York law firm, seeks to recover legal fees allegedly owed by defendant Medical Taping Systems, Inc. ("MTS").[1] LLBL alleges that MTS breached a retainer agreement and fraudulently conveyed its assets to the eight individual defendants. These defendants—Stephen Solenberger, G. Booker Schmidt, Roland Desilets, Jr., Diane Mann, K.C. Craichy, Monica Craichy, Maynard Ramsey, and David Shell[2]—are the sole shareholders of MTS, and some appear to have served MTS in other capacities.[3] Also named as a defendant is Nellcor Puritan Bennett, Inc. ("Nellcor"),[4] a former competitor of MTS.

Two motions are now before the Court. First, the individual defendants move to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Second, LLBL moves, pursuant to Rule 12(b)(6), to dismiss MTS's breach-of-contract counterclaim for failure to state a claim upon which relief can be granted. For the reasons discussed below, the individual defendants' motion is denied and LLBL's motion is granted.

## BACKGROUND

On September 13, 1994, LLBL and MTS entered a retainer agreement (the "Retainer Agreement"). The Retainer Agreement called for LLBL to provide MTS with intellectual property legal services with respect to a medical product (the "Product") manufactured and sold by MTS. At the time, MTS was a start-up company with a contemplated product and no sales. For this reason, the Retainer Agreement specified a fixed-fee arrangement based on MTS's anticipated reve-

Levisohn, Lerner, Berger & Langsam, New York City (Marilyn Neiman, of counsel), for Plaintiff.

De Caro & De Caro, Purchase, New York (Philip A. De Caro, of counsel), Pullman & Comley, LLC, Bridgeport, CT, (William J. Wenzel, John E. Keenan, III, of counsel), for Defendants.

---

1. MTS is a Pennsylvania corporation with its principal place of business in that state.

2. Solenberger resides in Pennsylvania. Desilets resides in New Jersey. Mann resides in Georgia. K.C. Craichy, Monica Craichy, Schmidt, Ramsey, Shell are Florida residents.

3. For example, Solenberger is also the president of MTS, and Schmidt, K.C. Craichy, and perhaps Desilets have also served as MTS's legal counsel.

4. Nellcor is a Delaware corporation with its principal place of business in California.

nues. Specifically, MTS was to pay LLBL a fixed fee constituting 10% of gross revenues received from sales of the Product and other related products. The Retainer Agreement stated that the fixed-fee arrangement would apply for five years, over which LLBL would be entitled to no more than $300,000 in fees annually.

MTS entered into the Retainer Agreement largely because it anticipated intellectual property disputes with Nellcor, which sold a medical device similar to the Product developed by MTS. For the first one-and-a-half years of their relationship, LLBL provided MTS with advice on intellectual property and antitrust issues pertaining to Nellcor. LLBL also helped MTS commence a declaratory judgment action against Nellcor in the United States District Court for the Eastern District of Pennsylvania; that action was voluntarily dismissed.

In February 1996, Nellcor sued MTS in the United States District Court for the Northern District of California, asserting causes of action relating to MTS's sales of the Product. LLBL represented MTS in that litigation and successfully opposed Nellcor's motion for a preliminary injunction. According to the individual defendants, MTS paid LLBL approximately $250,000 in legal fees for its services in connection with the Nellcor dispute.

Soon thereafter, MTS and Nellcor participated in settlement discussions in California; LLBL did not participate in these discussions. On May 8, 1997, MTS and Nellcor entered into a settlement agreement (the "Settlement Agreement") providing [REDACTED].

After entering into the Settlement Agreement with Nellcor, MTS directed LLBL to execute a consent judgment and order (the "Consent Judgment") terminating the Nellcor litigation. However, citing the need for confidentiality, MTS refused to provide LLBL with a copy of the Settlement Agreement.[5] Concerned about receiving fees due under the Retainer Agreement, LLBL was reluctant to sign the proposed Consent Judgment without reviewing the Settlement Agreement. On May 21, 1997, after discus-

sions between LLBL and defendants K.C. Craichy and Schmidt, MTS sent a letter (signed by defendant Solenberger as its president) to LLBL indicating that it was agreeing to LLBL's demand to be paid between 5% and 8% of the settlement amount (the "Letter Agreement"). The letter stated that MTS agreed to negotiate a fee in that range provided that LLBL cooperated in executing the Consent Judgment. (*See* Langsam Aff. Exh. F.) LLBL complied, and the Consent Judgment was entered on June 2, 1997.

MTS and LLBL failed to reach a settlement, however. In order to collect the fees it claimed, LLBL sought leave from the court overseeing the Nellcor action to conduct a supplemental proceeding. According to the individual defendants, LLBL represented to that court that MTS owed it $[REDACTED] (which, although LLBL did not then know the precise amount of the settlement, turned out to be exactly 10% of that amount). In November 1997, the court declined to entertain LLBL's claim. As a condition of that ruling, however, MTS consented to jurisdiction in New York. This action followed.

LLBL now claims that MTS breached the Retainer Agreement and the Letter Agreement. LLBL asserts that it is owed a percentage of the $[REDACTED] settlement between MTS and Nellcor because those proceeds constitute "gross revenues" under the Retainer Agreement. LLBL also asserts tort claims against the individual shareholder defendants, alleging that MTS fraudulently conveyed the proceeds of the Settlement Agreement to its shareholders, with their knowledge and consent, as part of a conspiracy to defeat LLBL's right to a portion of the proceeds. Additionally, LLBL asserts claims for enforcement of a charging lien, director and shareholder liability, and successor-in-interest liability. In total, LLBL now seeks over $1.25 million in damages.

## DISCUSSION

I. *Personal Jurisdiction Over the Individual Defendants*

 On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the

---

5. LLBL did not receive a copy of the Settlement Agreement until April 9, 1998, three days after

this Court "So Ordered" a Stipulated Protective Order.

plaintiff ultimately bears the burden of establishing, either at an evidentiary hearing or at trial, that the court has personal jurisdiction over the defendants. *See Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566–67 (2d Cir.), *cert. denied*, 117 S.Ct. 508 (1996). Where, as here, the issue is addressed on affidavits without the benefit of an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction—*i.e.*, "an averment of facts that, if credited ..., would suffice to establish jurisdiction over the defendant." *Id.* at 567. Under such circumstances, allegations in the pleadings and affidavits "are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." *A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir.1993).

In federal court, personal jurisdiction is determined according to the law of the state where the court sits. *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 27 (2d Cir.1997); *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir.1996). If the state's long-arm statute authorizes personal jurisdiction over the defendant, the court must then determine whether exercise of such jurisdiction would comport with the requirements of due process under the federal Constitution. *Bensusan*, 126 F.3d at 27; *Metropolitan Life*, 84 F.3d at 567.

Section 302(a) of New York's long-arm statute provides:

... a court may exercise personal jurisdiction over any non-domiciliary .... who in person or through an agent:

1. transacts any business within the state ...; or ...

3. commits a tortious act without the state causing injury to person or property within the state, ... if he ...

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce....

N.Y.Civ.Prac.L. & R. § 302(a). Section 302(a) does not extend New York's long-arm

jurisdiction to the full extent permitted by the Constitution. *See Beacon Enter., Inc. v. Menzies*, 715 F.2d 757, 764 n. 6 (2d Cir.1983); *Ingraham v. Carroll*, 90 N.Y.2d 592, 665 N.Y.S.2d 10, 11–12, 687 N.E.2d 1293 (1997); *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 527 N.Y.S.2d 195, 201, 522 N.E.2d 40, 46 (1988).

### A. Section 302(a)(1)

In order to establish personal jurisdiction under § 302(a)(1) the plaintiff must show (1) that the defendant "transacts business" within the state, and (2) that the claim "arises from" that transaction. *See Agency Rent A Car*, 98 F.3d at 29. A non-domiciliary transacts business within the state when he "purposefully avails [himself] of the privilege of conducting activities within (New York), thus invoking the benefits and protections of its laws." *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986) (citations omitted). Proof of a single transaction in New York may be sufficient to invoke jurisdiction, even if defendant never entered New York, provided that the contact was purposeful and the totality of the circumstances indicate that the exercise of jurisdiction would be proper. *See id.; Kreutter*, 527 N.Y.S.2d at 198–99, 522 N.E.2d at 43. Once it has been determined that the defendant transacted business within New York, the plaintiff must also establish that there is a "substantial nexus" between the business transacted and the cause of action. *See Agency Rent A Car*, 98 F.3d at 31.

#### 1. Defendant Solenberger

Solenberger, a Pennsylvania resident, founded MTS in January 1993. He is the company's president and its sole director and officer. (*See* Solenberger Aff. ¶¶ 2, 6–7.) By his own admission, Solenberger visited LLBL's offices in New York to negotiate the Retainer Agreement and later to prepare for a court hearing involving MTS. (*Id.* ¶¶ 8–9.) He also is alleged to have made telephone calls and sent correspondence, including the Letter Agreement, to LLBL in New York regarding the performance of the Retainer Agreement.

"[W]here a defendant has entered the state, even for one day, to negotiate and execute the contract on which suit is eventually brought, § 302(a)(1) gives jurisdiction." *Mayes v. Leipziger*, 674 F.2d 178, 183 (2d Cir.1982) (citing *George Reiner & Co. v. Schwartz*, 41 N.Y.2d 648, 394 N.Y.S.2d 844, 363 N.E.2d 551 (1977)). Although it appears that Solenberger did not actually execute the Retainer Agreement in New York, the totality of his New York contacts—including his presence in New York during the contract negotiations and his subsequent communications with LLBL's offices in New York regarding performance of that contract—constitutes "transacting business" for jurisdictional purposes.

■ However, whether these contacts are substantially related to the causes of action asserted against Solenberger presents a slightly closer question. Solenberger's most substantial New York contact—visiting LLBL's New York office to negotiate the Retainer Agreement—relates most directly to the breach of contract claim, which is asserted against MTS and not Solenberger (who negotiated and signed on behalf of MTS), and not to the torts claims asserted against him personally. Nevertheless, the conduct for which LLBL seeks to hold Solenberger personally liable—the alleged fraudulent conveyance of MTS assets to its shareholders—is essentially an attempt by a nonparty to the Retainer Agreement to prevent recovery for an alleged violation of that contract. Moreover, at least one of Solenberger's New York contacts—the Letter Agreement—arose out of an attempt to settle the contract claim. Accordingly, there is a substantial nexus between Solenberger's New York contacts and the causes of action asserted against him. The Court therefore finds that under § 302(a)(1), LLBL has established a prima facie case of personal jurisdiction over Solenberger.

**6.** Arguably, LLBL's brief reflects that it has abandoned this argument, relying instead solely on the two other theories (*i.e.*, agency and conspiracy) of personal jurisdiction over the individual defendants. However, because this is uncertain, the Court will address the issue of whether K.C. Craichy, Schmidt, and/or Desilets personally

### 2. *Other Individual Defendants*

■ LLBL asserts three theories of liability over the other individual defendants under § 302(a)(1). First, with respect to K.C. Craichy, Schmidt, and Desilets, LLBL contends that they personally transacted business in New York by making "numerous written and telephonic communications to LLBL...." (Compl.¶ 17(b).) [6] These interstate communications consisted of about five telephone calls from K.C. Craichy, (*see* K.C. Craichy Aff. ¶ 7), and about ten calls and four letters or faxes from Schmidt, (*see* Schmidt Aff. ¶ 7), and pertained to the settlement of the Nellcor litigation in California and to the dispute between MTS and LLBL over legal fees. (*See* Langsam Aff.Exhs. C, F, G, H & J.)

■ Generally, telephone or written communications do not provide a basis for personal jurisdiction under § 302(a)(1) unless "they are used by the defendant to actively participate in business transactions in New York." *Carlson v. Cuevas*, 932 F.Supp. 76, 78 (S.D.N.Y.1996); *see also Wilhelmshaven Acquisition Corp. v. Asher*, 810 F.Supp. 108, 112 (S.D.N.Y.1993) (telephone and mail contacts are jurisdictionally insufficient "unless the defendant projected himself by those means into New York in such a manner that he purposefully availed himself ... of the benefits and protections of its laws") (citations and internal quotation marks omitted); *Professional Personnel Mgmt. Corp. v. Southwest Med. Assocs., Inc.*, 216 A.D.2d 958, 958, 628 N.Y.S.2d 919, 919–20 (4th Dep't 1995) ("Interstate negotiations by telephone, facsimile or mail are insufficient to impose personal jurisdiction in New York upon a non-resident defendant.") (collecting cases). The communications cited by LLBL do not rise to the level at which K.C. Craichy, Schmidt, or Desilets can be said to have "actively participated" in New York business

transacted business in New York within the meaning of § 302(a)(1). This inquiry is limited to the three aforementioned individual defendants because there is no allegation in either the complaint or affidavits that Monica Craichy, Shell, Mann or Ramsey personally transacted business in New York.

transactions.[7] Therefore, the communications are insufficient, in and of themselves, to establish that those individual defendants personally transacted business in New York.

■■■■ Second, even if none of the individual defendants transacted business in New York "in person," LLBL contends that personal jurisdiction can be exercised over them because, as provided by § 302(a), they transacted business "through an agent"—that is, Solenberger and/or MTS. "In determining whether an agency exists under § 302, courts focus on the realities of the relationship in question rather than the formalities of agency law." *CutCo*, 806 F.2d at 366; *see also Kreutter*, 527 N.Y.S.2d at 199, 522 N.E.2d at 44 ("Plaintiff need not establish a formal agency relationship. . . ."). In order to be considered an agent for jurisdictional purposes, the purported agent—whether an individual or a corporation—must have acted in New York for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal. *See Retail Software Servs., Inc. v. Lashlee*, 854 F.2d 18, 22 (2d Cir.1988); *CutCo*, 806 F.2d at 366; *Kreutter*, 527 N.Y.S.2d at 199, 522 N.E.2d at 44.

The only significant New York contacts made by Solenberger (on behalf of MTS) are those surrounding the formation of the MTS–LLBL relationship—in particular, his September 1994 visit to LLBL in New York to negotiate the Retainer Agreement. It is undisputed that at the time the Retainer Agreement was negotiated and executed, six of the remaining seven individual defendants (all but Desilets) had not yet acquired shares in, and were not otherwise associated with, MTS. (*See* Affs. K.C. Craichy, Monica Craichy, Schmidt, Mann, Ramsey, and Shell; Supplemental Solenberger Aff. ¶ 7.) There-

fore, Solenberger and/or MTS clearly did not act as the agent of those defendants.

Defendant Desilets, however, was in a different position than those six individual defendants at the time Solenberger signed the Retainer Agreement. Desilets was involved with MTS at that time, and he appears to have been more than a passive stockholder. LLBL argues that "[a]lthough Desilets was not a signatory to the [Retainer Agreement], he was concerned that he would be included as a defendant in any litigation brought by Nellcor and made arrangements to be included in LLBL's representation should he be sued by Nellcor." (Pl.'s Mem. in Opp. to Mot. to Dismiss at 22 n. 10.) On its face, the language of the Retainer Agreement lends some support to this contention: "This letter will serve to outline our relationship regarding our [*i.e.*, LLBL's] representing Medical Taping Systems, Inc. (MTS) and you [*i.e.*, Solenberger] and your partners, personally (currently Tom Keating and Roland Desilets, Jr.) . . . ."[8] This alone suggests that in conducting negotiations with LLBL in New York, Solenberger may have been acting as an agent for Desilets—that is, under some control by Desilets, with his knowledge and consent, and at least in part for his benefit. Accordingly, LLBL has established a prima facie case of personal jurisdiction over Desilets under § 302(a)(1).

■■■■ Finally, LLBL argues that the individual defendants are subject to personal jurisdiction in New York based on a conspiracy theory. It asserts that "the individual defendants joined in a conspiracy to fraudulently divert the assets of MTS to them to defeat LLBL's right to legal fees from MTS pursuant to [the Retainer Agreement]," and that they "acted in concert in signing the settlement agreement [with Nellcor], accepting their pro rata share of the settlement

---

7. Moreover, although ¶ 17(b) of the Complaint alleges that Desilets was among those individual defendants who "made numerous written and telephonic communications to LLBL in New York, as further alleged below," the ensuing allegations merely state that Desilets was involved in reaching certain decisions that were communicated to LLBL by other defendants. There are no specific allegations that Desilets actually communicated with LLBL's office in New York.

8. Other language in the Retainer Agreement suggests that only LLBL and MTS were parties to that contract. The Court need not resolve the issue at the present time, however. For purposes of LLBL's prima facie case in opposition to the instant motion, it is enough that LLBL has provided some evidence that Desilets was directly involved in negotiating and forming the LLBL–MTS relationship.

funds, and agreeing not to pay LLBL its legal fees pursuant to [the Retainer Agreement]." (Pl.'s Mem. in Opp. to Mot. to Dismiss at 21.) Under New York law, "tortious acts of a co-conspirator within New York may be attributed to an out-of-state defendant in order to obtain personal jurisdiction over the defendant, on the theory that the co-conspirator is carrying out activities in New York in furtherance of the conspiracy." *Andre Emmerich Gallery, Inc. v. Segre,* 1997 WL 672009, at *4 (S.D.N.Y. Oct.29, 1997) (citing *Grosser v. Commodity Exch., Inc.,* 639 F.Supp. 1293, 1308 (S.D.N.Y.1986), *aff'd,* 859 F.2d 148 (2d Cir.1988)).

■ However, "the bland assertion of conspiracy . . . is insufficient to establish personal jurisdiction. . . ." *Lehigh Valley Indus., Inc. v. Birenbaum,* 527 F.2d 87, 93–94 (2d Cir.1975). Instead, a plaintiff must allege a prima facie case of conspiracy by asserting facts demonstrating (1) an agreement to enter into a conspiracy, (2) the non-domiciliary's participation in the conspiracy and acts in furtherance thereof, and (3) a connection between the non-domiciliary and the allegedly tortious acts committed in New York. *See Andre Emmerich Gallery,* 1997 WL 672009, at *4–5; *Qantel Corp. v. Niemuller,* 771 F.Supp. 1361, 1365 (S.D.N.Y.1991).

■ The Court need not decide whether LLBL has adequately alleged a conspiracy because LLBL's conspiracy theory of personal jurisdiction is inapplicable here. LLBL appears to assert this theory under § 302(a)(1). However, conspiracy-based jurisdiction is more properly based on § 302(a)(2), which authorizes personal jurisdiction over a non-domiciliary who commits a tortious act within the state. *See, e.g., Andre Emmerich Gallery,* 1997 WL 672009, at *4; *North South Fin. Corp. v. Al–Turki,* 1996 WL 50526, at *6 (S.D.N.Y.), *aff'd,* 100 F.3d 1046 (2d Cir.1996); *Qantel,* 771 F.Supp. at 1365; *Grosser,* 639 F.Supp. at 1308; *Ghazoul v. International Mgmt. Servs., Inc.,* 398 F.Supp. 307, 312 (S.D.N.Y.1975); *see also Bensusan Restaurant Corp. v. King,* 126 F.3d 25, 28 (2d Cir.1997) (" § 302(a)(2) reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act").

Thus, LLBL must tie the out-of-state, allegedly conspiratorial acts of the individual defendants to some tortious act committed within New York. Despite a generous reading of LLBL's allegations and supporting documentation, the Court finds that LLBL has failed to do so. Therefore, the Court cannot assert personal jurisdiction over the individual defendants under either § 302(a)(1) or § 302(a)(2) based on a conspiracy theory.

### B. *Section 302(a)(3)(ii)*

■ In order to establish personal jurisdiction under § 302(a)(3)(ii), the plaintiff must sufficiently allege (1) that the defendant committed a tortious act outside of New York, (2) that the defendant's conduct caused injury within New York, (3) that the defendant expects or reasonably should have expected the act to have consequences in New York, and (4) that the defendant derives substantial revenue from interstate or international commerce. *See Ingraham v. Carroll,* 90 N.Y.2d 592, 665 N.Y.S.2d 10, 11–12, 687 N.E.2d 1293 (1997).

LLBL alleges a conspiracy among the individual defendants to deprive LLBL of its share of the proceeds from the Nellcor settlement, which LLBL alleges it was due pursuant to the Retainer Agreement, by fraudulently conveying those proceeds to themselves. LLBL asserts that the individual defendants were signatories to the Settlement Agreement and, apparently as evidence of improper intent, points out that some of them participated in the decision to deny LLBL access to the Settlement Agreement. The individual defendants counter that (1) LLBL expressly agreed to accept 5.2% of the settlement amount in satisfaction of its claims, and that all of the individual defendants knew this, and (2) MTS and its shareholders were acting on the advice of independent counsel that MTS had no obligation under the Retainer Agreement to pay LLBL a percentage of the Nellcor settlement amount. (*See* Supplemental Solenberger Aff. ¶¶ 10–13.)

■ For present purposes, the Court finds that LLBL has sufficiently alleged tor-

tious conduct outside New York. In addition, the Court finds that the injury to LLBL, if any, occurred within New York. The individual defendants are correct in arguing that under § 302(a)(3), an injury does not occur "within the state" simply because that is where the plaintiff is located or suffered economic loss. *See, e.g., Mareno v. Rowe,* 910 F.2d 1043, 1046 (2d Cir.1990) ("An injury ... does not occur within the state simply because the plaintiff is a resident. '[T]he situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by the plaintiff.' ") (quoting *Carte v. Parkoff,* 152 A.D.2d 615, 616, 543 N.Y.S.2d 718, 719 (2d Dep't 1989)); *United Bank of Kuwait, PLC v. James M. Bridges, Ltd.,* 766 F.Supp. 113, 116 (S.D.N.Y.1991) ("New York courts uniformly hold that the situs of a nonphysical, commercial injury is where the critical events associated with the dispute took place.... The occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York.") (internal citations and quotation marks omitted).

This limitation was designed to prevent injuries indirectly or fortuitously connected to New York from providing the basis for personal jurisdiction.[9] Such concerns are not present here. Accepting LLBL's allegations as true, the individual defendants' tortious conduct was intended to avoid an obligation to a New York entity under a contract negotiated and partially executed in New York. The tortious conduct was therefore *designed* to injure LLBL in New York. In addition, and for this reason, the individual defendants expected, or at least reasonably should have expected, their acts to have consequences in New York.[10]

Therefore, the Court concludes that under § 302(a)(3)(ii), LLBL has established a prima facie case of personal jurisdiction over the individual defendants.

### C. Due Process

■ The exercise of personal jurisdiction under a state long-arm statute comports with constitutional due process only if the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citation and internal quotation marks omitted); *accord Calder v. Jones,* 465 U.S. 783, 788, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291 (1980); *Chew v. Dietrich,* 143 F.3d 24, at 27–28 (2d Cir.1998). Having given due consideration to all factors relevant to this inquiry, *see Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 567–69 (2d Cir. 1996), the Court finds that for purposes of LLBL's prima facie case, the assertion of personal jurisdiction over the individual defendants would not offend the standards of due process.

Accordingly, the motion by the individual defendants to dismiss for lack of personal jurisdiction is denied.

### II. MTS Counterclaim

■ In its Answer, MTS asserted the following counterclaim:

On or about September 13, 1994, Plaintiff and Defendant MTS entered into an agreement whereby Plaintiff would act as

---

9. *See, e.g., Fantis Foods, Inc. v. Standard Importing Co.,* 49 N.Y.2d 317, 425 N.Y.S.2d 783, 787, 402 N.E.2d 122, 126 (1980) ("It has ... long been held that the residence or domicile of the injured party within a State is not a sufficient predicate for jurisdiction, which must be based upon a more direct injury within the State and a closer expectation of consequences in the State than the indirect financial loss resulting from the fact that the injured person resides or is domiciled there.")

10. The individual defendants do not even address the fourth requirement of § 302(a)(3)(ii) jurisdiction—substantial revenue from interstate commerce. That requirement "is intended to exclude non-domiciliaries' whose business operations are of a local character." *Bensusan,* 126 F.3d at 29 (citations omitted); *see also United Bank of Kuwait,* 766 F.Supp. at 117–18. At least for purposes of LLBL's prima facie case, this requirement does not appear to stand in the way of exercising personal jurisdiction.

attorney to MTS [*i.e.,* the Retainer Agreement].

In May of [1997], Plaintiff breached its agreement with Defendant MTS by refusing to act in the best interests of Defendant[ ] MTS.

Prior to May 1997, Plaintiff was paid approximately $250,000 as fees for its services, pursuant to its agreement with Defendant MTS. These fees are in excess of reasonable attorneys' fees.

Defendant is entitled to the return of all amounts paid to Plaintiff in excess of a reasonable fee for the services actually rendered by Plaintiff.

LLBL contends that this pleading fails to provide it with adequate notice of the grounds for the counterclaim as required by Rule 8(a) and accordingly should be dismissed.

In order to state a claim for breach of contract under New York law, a party must allege: (1) the existence of an agreement between the parties; (2) due performance of the contract by the party alleging the breach; (3) a breach by the other party; and (4) damages resulting from the breach. *Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*, 893 F.Supp. 285, 290 (S.D.N.Y.1995). However, under the relaxed federal pleading requirements, each element need not be separately pleaded. *Id.* Rather, it is enough that the pleading "contain 'a short and plain statement of the claim' sufficient to put the [adverse party] on notice of the grounds for which the [claimant] seeks relief." *Id.* at 291 (quoting Fed.R.Civ.P. 8(a)(2)).

"[T]he principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable [that party] to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988). Although the pleading requirements are construed liberally, "[l]iberal construction has its limits, for the pleading must at least set forth sufficient information for the court to determine whether some recognized legal theory exists upon which relief could be accorded the pleader. If it fails to do so, a motion under Rule 12(b)(6)

will be granted." 2 Moore's Federal Practice § 12.34[1][b] at 12–60 (3d ed.).

MTS's counterclaim fails to meet even this limited notice function. Although the counterclaim sufficiently alleges the existence of a contract (the Retainer Agreement) and MTS's performance under the contract (paying LLBL approximately $250,000 in legal fees pursuant to the Retainer Agreement), it founders on the final two requirements. The allegation of breach by LLBL—"refusing to act in the best interests of" MTS—sheds no light on how LLBL supposedly breached the contract. This vague allegation does not put LLBL on notice of what it allegedly failed to do.

Granted, in all likelihood LLBL has correctly surmised that the breach alleged in the counterclaim refers to LLBL's initial refusal to execute the Consent Judgment that ended the Nellcor–MTS litigation. (*See* Pl.'s Mem. in Supp. of Mot. to Dismiss MTS Countercl. at 10.) However, even if this supposition is correct, the counterclaim fails to sufficiently plead damages resulting from that alleged breach. The Consent Judgment ultimately was entered, and MTS has not alleged how the apparently short delay caused it any harm.

Accordingly, LLBL's motion to dismiss MTS's counterclaim is granted. However, MTS is granted leave to replead within 15 days. The amended counterclaim should more specifically state how LLBL allegedly breached the Retainer Agreement and how MTS was damaged by that conduct.

## CONCLUSION

For the reasons discussed above, the motion by the individual defendants to dismiss for lack of personal jurisdiction is denied. LLBL's motion to dismiss MTS's counterclaim for failure to state a claim is granted. MTS may file an amended counterclaim within 15 days.

SO ORDERED.