Ridley M. WHITAKER, Plaintiff,

v.

FRESNO TELSAT, INC.; James A. Simon; American Telecasting, Inc.; Jas Partners, Ltd.; Rosenthal, Judell & Uchima, and John Doe Nos. 1–10 (which are individual and entities whose identities at this time are unknown), Defendants.

No. 99 Civ. 6059(SAS).

United States District Court,
S.D. New York.

Dec. 14, 1999.

Ridley M. Whitaker, New York, NY, Plaintiff, pro se.

William H. Barrett, McDermott, Will & Emery, New York, NY, for Defendant ATI.

### *OPINION & ORDER*

SCHEINDLIN, District Judge.

Defendant American Telecasting, Inc. ("ATI") moves, pursuant to Federal Rule of Civil Procedure 12(b)(2), to dismiss plaintiff's Amended Complaint which seeks payment of legal fees. Because this Court lacks personal jurisdiction over ATI, the motion is granted.

### I. FACTS

The plaintiff in this action, Ridley M. Whitaker, is an attorney licensed to practice in the State of New York. The Amended Complaint alleges that plaintiff was injured as a result of a conspiracy among the defendants,[1] including ATI, to deprive

---

1. FTI is a corporation incorporated under the laws of Indiana with its principal place of business in Indiana. Amended Complaint ¶ 3. Defendant James A. Simon is a resident

plaintiff of fees allegedly due under a retainer agreement between plaintiff and defendant Fresno Telsat, Inc. ("FTI").[2] Amended Complaint ¶ 35. Pursuant to that agreement, plaintiff was to receive fees for legal services performed in connection with his representation of FTI from 1994 to 1998. *Id.* Such services included representation in a trial brought by FTI against ATI and other defendants venued in the State of California.[3] *Id.* ¶ 17. FTI retained Whitaker in New York City, *id.*, and the retainer agreement between FTI and Whitaker was negotiated and drafted in New York. *See* Opp. Mem. at 12.

ATI is a Delaware corporation whose main offices are located in Colorado. Affidavit of David K. Sentman, ATI's Senior Vice President and Chief Financial Officer, in Support of Motion to Dismiss, sworn to July 29, 1999 ("Sentman Aff."). ATI is not incorporated, licensed or qualified to do business in New York. *Id.* ¶ 4. ATI has no office, agents, employees, property, bank accounts or telephone listings in New York. *Id.* ATI has not appointed an agent for service of process in New York. *Id.* ATI does not market or sell any of its products in New York. *Id.* Nor does it otherwise transact any business in New York. *Id.* Finally, ATI has done nothing to avail itself of the laws of the State of New York with respect to this lawsuit. *Id.*

## II. DISCUSSION

### A. Legal Standard

■ In general, "the amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee." *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 223 (2d Cir.1963) (en banc).

District courts resolving issues of personal jurisdiction must therefore engage in a two-part analysis. First, they must determine whether there is jurisdiction over the defendant under the relevant forum state's laws—which, in this case, are the various subsections of New York's C.P.L.R. § 302(a) ... Second, they must determine whether an exercise of jurisdiction under these laws is consistent with federal due process requirements.

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 784 (2d Cir.1999) (citing *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 567 (2d Cir.1996)).

■ The plaintiff bears the burden of establishing that the court has jurisdiction over the defendant when a Rule 12(b)(2) motion to dismiss is made. *See Robinson*

---

of Indiana. *Id.* ¶ 4. Defendant JAS Partners, Ltd. is a business entity organized in Colorado. *Id.* ¶ 14. Defendant Rosenthal, Judell & Uchima ("RJU") is a New York partnership. *Id.* ¶ 6. However, because RJU was fraudulently joined as a defendant, it was dismissed by this Court pursuant to Rule 21. *See* Opinion and Order dated September 24, 1999.

2. The Amended Complaint was originally filed in New York State court but was removed to federal court by defendants FTI, James A. Simon and JAS Partners, Ltd. (collectively the "FTI defendants"). *See* Plaintiff's Memorandum of Law in Opposition to Dismiss ("Opp.Mem.") at 2. ATI consented to this removal. *Id.*

3. In settlement of FTI's claims against ATI, ATI agreed to the cancellation of FTI's indebt-

edness to it in the amount of approximately $3,000,000 and to make two payments of $9,500 and $1,500,000 to FTI. Amended Complaint ¶ 29. Whitaker alleges he was to receive 33% of the net recovery of the Settlement Value of approximately $4,509,000. *Id.* ¶ 30. Following the settlement, FTI refused to pay Whitaker any attorney's fees. *Id.* ¶ 34. The defendants claim that there was no settlement of FTI's claims against ATI except for the $9,500 payment. ATI made no mention of the cancellation of FTI's debt and, according to Whitaker, mischaracterized the $1,500,000 payment as a sale of one of FTI's partnership interests to ATI in an apparent attempt to evade the reach of the New York statutory charging lien. *Id.* ¶¶ 28, 33.

*v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir.1994). However, " 'prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, . . ., legally sufficient allegations of jurisdiction.' " *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir.1998) (quoting *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.1990)). Thus, a plaintiff "need make only a prima facie showing of jurisdiction through [his] own affidavits and supporting materials." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981). Furthermore, "where the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir.1993).

### B. New York's C.P.L.R. § 302(a)

New York's long-arm statute is codified in section 302 of its Civil Practice Law and Rules and provides for jurisdiction over any non-domiciliary who:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, . . .; or

3. commits a tortious act without the state causing injury to person or property within the state, . . ., if [it]

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

N.Y. C.P.L.R. § 302 (McKinney 1990). Each of these subsections will be analyzed in turn.

### 1. C.P.L.R. § 302(a)(1)

During the months of June and July 1998, Martin S. Fletcher, an attorney, made numerous telephone calls to Whitaker in New York for the purpose of obtaining his consent to the sale of FTI's partnership interest. Opp. Mem. at 9. Plaintiff contends that as a result of these calls, ATI sought the benefit and protections of New York's laws or attempted to engage in business in New York. Plaintiff is wrong for two reasons.

■ First, Mr. Fletcher is legal counsel to FTI, not ATI. Affidavit of Martin T. Fletcher, Sr., sworn to September 30, 1999 ("Fletcher Aff."), ¶ 2. In his affidavit, Martin states: "At no time have I ever represented ATI in any matter. At no time did I act or undertake to act as attorney for or agent of ATI in any matter." *Id.* ¶ 5. More specifically, with regard to the communications he made to Whitaker, Martin states that all such communications were made by him as legal counsel for FTI. *Id.* ¶ 6. Given these representations, any actions taken by Fletcher cannot be imputed to ATI because Fletcher was working in his sole capacity as FTI's attorney.

■ Even assuming Fletcher's communications could be attributed to ATI, however, there still would be no jurisdiction under C.P.L.R. § 302(a)(1). Jurisdiction can rarely be based solely on defendant's telephone calls into New York. *See Carlson v. Cuevas*, 932 F.Supp. 76, 78 (S.D.N.Y.1996) (citing *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir. 1983)). Only "[i]f the purpose of the calls is for the defendant to actively participate in business in New York, [can] they alone . . . support a finding of New York long arm jurisdiction under C.P.L.R. § 302(a)(1)." *Carlson*, 932 F.Supp. at 78. This is certainly not the case here. "New York courts have held that conducting contractual negotiations by phone, fax or mail with a party in New York does not constitute the transaction of business within the state." *Worldwide Futgol Assocs., Inc. v.*

*Event Entertainment, Inc.*, 983 F.Supp. 173, 177 (E.D.N.Y.1997). Accordingly, Fletcher's telephone calls to Whitaker requesting his consent to the sale of FTI's partnership interest, even if made on behalf of ATI, do not constitute transacting business within New York and, therefore, cannot sustain jurisdiction under C.P.L.R. § 302(a)(1).

### 2. C.P.L.R. § 302(a)(2)

■ Plaintiff cannot establish jurisdiction over ATI pursuant to this subsection because the Second Circuit has ruled that a defendant's *physical* presence in New York is required under § 302(a)(2). *See Bensusan Restaurant Corp. v. King*, 126 F.3d 25 (2d Cir.1997). Plaintiff nowhere alleges that ATI ever sent an officer, employee or agent into New York, and therefore jurisdiction cannot be predicated upon § 302(a)(2).

### 3. C.P.L.R. § 302(a)(3)(ii)

■ To establish jurisdiction under C.P.L.R. § 302(a)(3)(ii), Whitaker must show: (1) ATI's commission of a tort outside New York; (2) injury to Whitaker in New York; (3) that ATI should have reasonably foreseen New York consequences; and (4) that ATI derives substantial revenue from interstate commerce. *See Popper v. Podhragy*, 48 F.Supp.2d 268, 273 (S.D.N.Y.1998). The first requirement has been met as plaintiff has alleged that FTI and ATI conspired and falsely consummated a settlement in order to deprive him of his fee. Amended Complaint ¶¶ 100–01. The fourth requirement has also been met as plaintiff alleges that ATI has derived revenue in excess of 10 million dollars from interstate commerce. *Id.* ¶ 15.

Arguably, the third requirement has also been met. In *National Westminster Bank PLC v. Retirement Care Assocs., Inc.*, 98 Civ. 6023, 1999 WL 239677 (S.D.N.Y. Apr. 23, 1999), the plaintiff ("NatWest") alleged that the defendants ("RCA" and "Sun") breached an engagement agreement in which RCA hired Nat-West to act as a financial advisor for a proposed merger between RCA and Sun. *Id.* at *1. The engagement agreement was drafted in New York by NatWest but was executed by RCA in Atlanta. *Id.* After the merger was consummated, RCA failed to pay NatWest. *Id.* at *2. Plaintiff asserted personal jurisdiction over RCA and Sun under C.P.L.R. § 302(a)(3)(ii) which defendants contested, arguing that the loss suffered by Natwest in New York "resulted solely by virtue of plaintiff's residence there." *Id.* at *3. The court disagreed, however, stating that

> [i]n this case, there is no other injury than the financial injury to NatWest in New York. By allegedly interfering with the engagement agreement between RCA and NatWest, Sun knew that its actions were directed at avoiding a financial obligation to a New York entity under a contract that was *partially negotiated and executed in New York* and should have expected that its actions would cause financial loss in New York. The financial injury suffered by NatWest in New York is, therefore, directly the result of Sun's alleged actions and personal jurisdiction over Sun is proper under CPLR 302(a)(3)(ii).

*Id.* (emphasis added, citations omitted).

The court in *Retirement Care Associates*, as well as plaintiff here, cite *Levisohn, Lerner, Berger & Langsam v. Medical Taping Sys., Inc.*, 10 F.Supp.2d 334 (S.D.N.Y.1998), as support for their assertion of jurisdiction. In *Levisohn*, the plaintiff, a New York law firm, sued to recover legal fees owed by defendant ("MTS"). Plaintiff alleged that MTS breached a retainer agreement and fraudulently conveyed its assets to the eight individual defendants. 10 F.Supp.2d at 337. The court found jurisdiction over the individuals under § 302(a)(3)(ii) and offered the following analysis:

> Accepting [plaintiff's] allegations as true, the individual defendants' tortious conduct was intended to avoid an obligation to a New York entity under a contract

negotiated and partially executed in New York. The tortious conduct was therefore designed to injure [plaintiff] in New York, In addition, and for this reason, the individual defendants expected, or at least reasonably should have expected, their acts to have consequences in New York.

*Id.* at 343.

Plaintiff makes no allegation that ATI knew that the retainer agreement between Whitaker and FTI was negotiated and drafted in New York. Presumably, however, ATI knew that Whitaker was a New York attorney and that withholding his legal fees would have consequences in New York. Thus, a strong argument can be made that ATI should have reasonably foreseen consequences in New York thereby satisfying the third requirement. I need not decide this issue, however, because plaintiff has failed to allege the second required element, namely an injury in New York.[4]

Plaintiff cites *Bank Brussels* and *Mega Tech Int'l Corp. v. Al–Saghyir Establishment*, 96 Civ. 8711, 1999 WL 269896 (S.D.N.Y. May 3, 1999), for the proposition that he was injured in New York. In *Bank Brussels*, the plaintiff, a bank, sued a Puerto Rican law firm for fraud and breach of fiduciary duty for failing to disclose certain negative information in an opinion letter which was a prerequisite to a loan made by the bank to a third party. 171 F.3d at 782. None of the law firm's partners or agents entered New York in connection with its services but the bank disbursed the money from an account in New York. *Id.* at 782–83. The court, in finding jurisdiction under C.P.L.R. § 302(a)(3), stated:

[C]ourts determining whether there is injury in New York sufficient to warrant § 302(a)(3) jurisdiction must generally apply a situs-of-injury test, which asks

them to locate the "original event which caused the injury." This "original event" is, however, generally distinguished not only from the initial tort but from the final economic injury and the felt consequences of the tort.

*Id.* at 791 (citation omitted). The *Bank Brussels* court found that the injury occurred in New York because, under the situs-of-injury test, the "original event" that caused the economic harm to the bank was the disbursement of funds and that disbursement took place in New York. *Id.* at 792.

Similarly, jurisdiction was found in *Mega Tech* where plaintiff, a New Jersey corporation, sued two Saudi Arabian corporations ("NKF" and "ASE") for failure to forward funds due under a construction contract. 1999 WL 269896, at *2–3. With regard to foreseeability, the court explained that "ASE's alleged actions committed outside New York with immediately foreseeable adverse business consequences to Mega Tech inside New York are precisely within the class of harms covered by § 302(a)(3)." *Id.* at *9. Recognizing that foreseeability alone is not enough to confer jurisdiction, the court went on to find injury in New York, as follows:

The first effect of ASE's conduct was also located in New York because Mega Tech had invested large sums of money in the State to plan the main hospital project and because Mega Tech lost prospective opportunities in New York. The "original event," just as in Bank Brussels, was a New York corporation's contribution of money to a project that ultimately caused the corporation to sustain significant financial losses due to tortious conduct that occurred outside the forum.

*Id.* at *10.

Plaintiff's reliance on *Bank Brussels* and *Mega Tech* is misplaced.

**4.** Although the courts in *Retirement Care Associates* and *Levisohn* found jurisdiction based on the foreseeability of defendants' actions, these findings appear to conflate the reasonably foreseeable requirement with the injury in New York requirement. C.P.L.R. § 302(a)(3)(ii) cannot be read so broadly as to find jurisdiction without a situs of injury or federal due process analysis.

His argument—that the "first effect of ATI's conduct was located in New York because the bills for services which FTI has refused to pay because of the fraudulent scheme conceived by ATI were to be paid in New York and to date remain unpaid," Opp. Mem. at 10—is unavailing. If the conspiracy to defraud is the tort, the first or "original event" is either the structuring of the partnership sale to avoid payment or the actual withholding of payment to Whitaker, both of which occurred outside New York. To confer jurisdiction according to where payment should be made would be to base jurisdiction solely upon the fact that plaintiff resides in New York. However, such a holding would directly contravene *Mareno v. Rowe*, 910 F.2d 1043 (2d Cir.1990) in which the Second Circuit stated that an injury "does not occur within the state simply because the plaintiff is a resident." [5]  910 F.2d at 1046.

Even assuming that plaintiff's alleged injury did in fact occur in New York, the exercise of jurisdiction would offend due process. As explained by the Second Circuit:

The due process requirement for personal jurisdiction, enunciated by the Supreme Court in the seminal case of *International Shoe Company v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), protects a person without meaningful ties to the forum state from being subjected to binding judgments within its jurisdiction....

The due process test for personal jurisdiction has two related components; the "minimum contacts" inquiry and the "reasonableness" inquiry. The court must first determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction....

The second stage of the due process inquiry asks whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice"—that is, whether it is reasonable under the circumstances of the particular case. The Supreme Court has held that the court must evaluate the following factors as part of this "reasonableness" analysis: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies....

Thus, in assessing whether it may exercise jurisdiction over a particular defendant, a court must weigh the relative strengths and weaknesses of each requirement—that is, depending upon the strength of the defendant's contacts with the forum state, the reasonableness component of the constitutional test may have a greater or lesser effect on the outcome of the due process inquiry.

*Metropolitan Life*, 84 F.3d at 567–68 (citations omitted).

Here, the reasonableness prong is arguably satisfied after applying the above five factors. Factor one cuts against jurisdiction as ATI will surely be burdened in defending an action in the Southern District of New York.[6] Factor two favors jurisdiction as New York presumably has a strong interest in ensuring that its residents are paid for the services they render to nonresidents. Factor three similarly favors jurisdiction as plaintiff has a strong interest in recovering his fees through a single litigation. Factor four also cuts in

---

5. Here, the place of payment and plaintiff's residence coincided. Assume, however, that plaintiff designated a bank in Hawaii as the payee. Would this mean that ATI is amenable to suit in Hawaii? Such an arbitrary result cannot be countenanced by the courts.

6. This burden may be less onerous if one considers that ATI could have and should have reasonably foreseen that its actions would have consequences in New York.

favor of jurisdiction as forcing plaintiff to split his case between the Southern District of New York and a Colorado court is not the most efficient way of resolving a single dispute. The fifth factor is neutral as this Court is unaware of any social policies implicated by plaintiff's cause of action.

■ The problem, however, is not the reasonableness prong, it is the minimum contacts requirement. ATI has no contacts with the state of New York, much less minimum contacts that would justify haling it into court here. No matter how eminently reasonable it may be to assert jurisdiction, the complete absence of minimum contacts precludes this Court from exercising jurisdiction. *See Ticketmaster—New York, Inc. v. Alioto,* 26 F.3d 201, 210 (1st Cir.1994) ("We think … that the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing [on minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of [minimum contacts]."). This is not a case of a "borderline showing" of minimum contacts, there simply are no contacts. Because the sliding scale tilts completely to one side, personal jurisdiction over ATI cannot be maintained. *See Donatelli v. National Hockey League,* 893 F.2d 459, 465 (1st Cir.1990) (If the defendant's contacts with the forum "do not exist in sufficient abundance, that is, if the constitutionally necessary first-tier minimum is lacking, the inquiry ends.").

### C. The Sprint Merger

■ On September 23, 1999, ATI became a wholly-owned subsidiary of the Sprint Corporation ("Sprint"). *See* Sur-Reply Memorandum of Law in Support of Motion to Dismiss the Amended Complaint at 3. Whitaker requests that he be permit-

---

7. C.P.L.R. § 301 provides for general jurisdiction over corporations that are "doing busi-

ted to engage in discovery concerning the relationship between ATI and Sprint for purposes of "301 jurisdiction."[7] *See* Supplemental Memorandum of Law of Mr. Whitaker in Opposition to Motion to Dismiss at 12. This request is denied. The relevant time frame for a jurisdictional inquiry under C.P.L.R. § 301 is at the time of the filing of the summons and complaint. *See Andros Compania Maritima S.A. v. Intertanker Ltd.,* 714 F.Supp. 669, 675 (S.D.N.Y.1989) (citations omitted). The fact that ATI may have subsequently become part of a corporation that is doing business within New York is irrelevant to the present jurisdictional analysis. Accordingly, Plaintiff is not permitted to conduct discovery on this issue.

### III. CONCLUSION

For the reasons stated above, this Court has no personal jurisdiction over ATI which is hereby dismissed from this lawsuit. A conference is scheduled for December 15, 1999 at 3:30 p.m. to discuss the status of this case.