OPINION OF THE COURT
Levine, J.
Appellant commenced this wrongful death action seeking damages related to the injuries sustained by his late wife, Alison S. Ingraham, allegedly as a result of the negligence and medical malpractice of respondent Dr. Frederick Loy and two other physicians, Dr. James Carroll and Dr. Jon Porter. The uncontroverted facts, as set forth in the parties’ papers, are as follows.
Respondent Loy is a vascular surgeon who practices and resides in Vermont. Although respondent also is licensed to practice medicine in New York, he does not maintain an office in New York or solicit business in this State. His private medi *595 cal practice is limited to Vermont, where he treats patients in Bennington and performs surgery at South Western Vermont Medical Center, also located in Bennington.
Appellant’s decedent was a patient of Community Health Plan (hereinafter CHP), a New York HMO with a clinic located in Hoosick Falls, New York, where decedent was under the care of CHP physicians Carroll and Porter. On several occasions, decedent’s CHP physicians referred her to respondent for a consultation in Bennington, which is close to the New York State border. Respondent is not under contract with CHP for consultation services. However, respondent frequently sees CHP patients on an ad hoc /fee-for-service basis, on referral from both the CHP Hoosick Falls facility and a CHP facility located in Bennington.
Pursuant to a written referral by her New York physicians, decedent first traveled to Vermont to see respondent on March 7, 1994, for consultation regarding decedent’s complaint of a nodule in her right breast. Decedent was again referred to respondent and, on August 17,1994, was seen by him in response to her CHP physicians’ concern about a nodule in her left armpit. After each examination, respondent sent instructions to decedent’s CHP physicians to withhold any invasive procedure to ascertain the nature of the nodule, but merely to observe it periodically. The third time that respondent saw decedent, on March 14, 1995, it was again with regard to the lump in decedent’s left armpit. At this point, respondent made arrangements to remove the nodule. He subsequently performed that surgery at South Western Vermont Medical Center and discovered that the nodule contained metastatic malignant melanoma cells.
The gravamen of appellant’s complaint against respondent is that he negligently failed to recognize the serious nature of his wife’s condition at an earlier stage and, as a result, made recommendations to her primary physicians against procedures that would have led to an earlier diagnosis of the cancer while it was still in a treatable stage. Because of this allegedly tortious diagnosis and recommendation, appellant asserts that decedent was injured in New York when her untreated cancer spread there and eventually caused her death.
At Supreme Court, appellant moved to strike respondent’s affirmative defense of lack of personal jurisdiction, relying exclusively on the long-arm jurisdiction provisions of CPLR *596 302 (a) (3).[1] Supreme Court granted respondent’s motion for dismissal for lack of personal jurisdiction on the ground that decedent’s injury occurred in Vermont, rather than in New York, as required under CPLR 302 (a) (3). The Appellate Division affirmed (235 AD2d 778), agreeing with Supreme Court that appellant had failed to establish that respondent’s allegedly tortious act outside of the State resulted in injury within the State. We granted appellant leave to appeal, and now affirm for reasons other than those relied upon below.
CPLR 302 (a) (3), the provision of New York’s long-arm statute at issue here, permits a court to exercise personal jurisdiction over a nondomiciliary who:
"3. commits a tortious act without the state causing injury to person or property within the state * * * if he
"(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
"(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce” (CPLR 302 [a] [3] [emphasis supplied]).
Under this provision, the appellant must show both that an injury occurred "within the state,” and that the elements of either clause (i) or (ii) have been satisfied. It is appropriate to point out that establishment of long-arm jurisdiction in con *597 nection with a New York injury under either clause does not implicate constitutional due process concerns. "[T]he subdivision [302 (a) (3)] was not designed to go to the full limits of permissible jurisdiction. The limitations contained in subparagraphs (i) and (ii) were deliberately inserted to keep the provision 'well within constitutional bounds’ ” (1 Weinstein-Korn-Miller, NY Civ Prac ¶ 302.14, quoting 12th Ann Report of NY Jud Conf, at 341; see also, McGowan v Smith, 52 NY2d 268, 274). Thus, in this case, we are bound by a limitation more stringent than any constitutional requirement — the specific requirements of CPLR 302 (a) (3).
Assuming, without deciding, that the alleged tortious conduct in Vermont caused injury within New York, the issue before us is whether appellant has successfully demonstrated that either the first or second jurisdictional subset of CPLR 302 (a) (3) has been met. Because we conclude that appellant has failed to satisfy the requirements of either clause (i) or (ii) of CPLR 302 (a) (3), we hold that the complaint against respondent was properly dismissed.
Subdivision (a) (3) (i) requires the party seeking to obtain jurisdiction to demonstrate that the tortfeasor "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state” (CPLR 302 [a] [3] [i] [emphasis supplied]). By this provision, the Legislature limited CPLR 302 (a) (3) (i) jurisdiction to extend only to those "who have sufficient contacts with this state so that it is not unfair to require them to answer in this state for injuries they cause here by acts done elsewhere” (12th Ann Report of NY Jud Conf, at 343). Thus, CPLR 302 (a) (3) (i) necessitates some ongoing activity within New York State (see, id. [stating that "a regular course of conduct in the state is required” (emphasis supplied)]; see also, Allen v Canadian Gen. Elec. Co., 65 AD2d 39, 40 [analyzing CPLR 302 (a) (3) (i) in terms of activity conducted within New York State], affd for reasons stated 50 NY2d 935). Although clause (i) does not require the quantity of New York contacts that is necessary to obtain general jurisdiction under the "doing business” test of CPLR 301 (see, id., at 343, n; see also, Siegel, NY Prac § 88, at 136 [2d ed]), it does require something more than the "one shot” single business transaction described in CPLR 302 (a) (1) (12th Ann Report of NY Jud Conf, at 343).
Here, appellant has made no showing that respondent "regularly does or solicits business * * * in the state” or "en *598 gages in any other persistent course of conduct * * * in the state” or "derives substantial revenue from goods used or consumed or services rendered[ ] in the state” (CPLR 302 [a] [3] [i] [emphasis supplied]). Indeed, it is undisputed that respondent practices only in Vermont. He neither treated decedent in New York, nor contracted to provide services in New York or solicited business in New York. Thus, the requirements of clause (i) have not been met.
A much closer question is presented under clause (ii) of CPLR 302 (a) (3). This provision requires the satisfaction of two prongs. To establish jurisdiction, á plaintiff must demonstrate that the nonresident tortfeasor: (1) "expects or should reasonably expect the act to have consequences in the state”; and (2) "derives substantial revenue from interstate or international commerce” (CPLR 302 [a] [3] [ii]). The first prong is intended to ensure some link between a defendant and New York State to make it reasonable to require a defendant to come to New York to answer for tortious conduct committed elsewhere. The nonresident tortfeasor must expect, or have reason to expect, that his or her tortious activity in another State will have direct consequences in New York (see, Fantis Foods v Standard Importing Co., 49 NY2d 317, 326; Sybron Corp. v Wetzel, 46 NY2d 197, 206; cf., Martinez v American Std., 91 AD2d 652, 653, affd for reasons stated 60 NY2d 873).
The first prong of CPLR 302 (a) (3) (ii) has been satisfied. Respondent concededly was aware that decedent, a New York resident, was receiving treatment from New York State primary physicians based, at least in part, on his recommendations. He contacted decedent’s physicians directly, by mail and via telephone, concerning the treatment she was to receive in New York. Significantly, respondent acknowledged that his expectation, when making recommendations, is that the CHP doctor in New York would follow his advice. Hence, respondent, in essence, has admitted that his allegedly tortious action (a misdiagnosis and improper recommendation) would have consequences within New York, satisfying the first prong of CPLR 302 (a) (3) (ii).
Thus, personal jurisdiction over respondent ultimately turns on whether he "derives substantial revenue from interstate or international commerce,” the indispensable second prong of subdivision (a) (3) (ii). Unlike clause (i), the "interstate commerce” prong of clause (ii) requires no direct contact with New York State (see, Siegel, op. cit., at 136). It is the first prong of clause (ii) (the expectation of New York consequences) that *599 ensures that the defendant has some direct contact with New York State. The substantial interstate commerce revenue component, on the other hand, narrows the long-arm reach to preclude the exercise of jurisdiction over nondomiciliaries who might cause direct, foreseeable injury within the State but "whose business operations are of a local character” (12th Ann Report of NY Jud Conf, at 342-343 [describing the interstate commerce prong of CPLR 302 (a) (3) (ii) as requiring a showing that defendant "was engaged in extensive business activities on an interstate or international level” (emphasis supplied)]; see also, Siegel, op. cit., at 136 [describing CPLR 302 (a) (3) (ii) as a "bigness requirement” designed to assure that the defendant is "economically big enough” to defend suit in New York]).
There is some support for the notion that the provision of medical services may never meet the definition of "commerce” for jurisdictional purposes (see, Markham v Gray, 393 F Supp 163, 166 [suggesting that the profession of medicine is not commerce under CPLR 302 (a) (3) (ii)], affd on other grounds sub nom. Markham v Anderson, 531 F2d 634, 637; see also, People v Roth, 52 NY2d 440, 448 [holding that the provision of medical services is not "commerce” for the purposes of applying the Donnelly Act]). We need not, however, decide so broad an issue today. Here, because respondent renders medical services wholly within his own State, he cannot be said to be engaging in interstate commerce (see, Etra v Matta, 94 AD2d 581, 585, affd 61 NY2d 455; see also, Markham v Gray, supra, at 166).
The situation where a local physician treats a nonresident patient is by no means uncommon. For example, local physicians may treat nonresident patients traveling on vacation, or, as in this case, because the physician’s office is located close to a State border*. Perhaps the most common example is where a physician is so outstanding a specialist in a particular field as to attract numerous referrals from other physicians. Such a physician may treat patients from many different States on a daily basis.
The diversity of a physician’s pool of patients, without more, cannot convert an otherwise local practice to an interstate business activity. A physician does not sell his or her services in interstate commerce by treating unsolicited patients that travel into the physician’s home State seeking health care. Indeed, to the physician, the patient’s residence is largely irrelevant to the provision of medical services. Unlike a manufacturer who introduces a product into the stream of commerce expecting it to be sold in other States, a physician treating *600 patients in his or her home State is providing a service that is inherently personal, and local, in nature. Undisputably, all of respondent’s revenue is derived from such local medical services, provided in Vermont. In this respect, respondent’s revenue is even less interstate in character than that of a renowned medical specialist, the bulk of whose income may be earned from treating out-of-State patients (see, Etra v Matta, 94 AD2d, at 585, supra). Thus, in terms of the substantial revenue from interstate commerce requirement of subdivision (a) (3) (ii), the existence of nothing more than an informal, even if frequent, referral practice from a New York HMO is insufficient, as is the fact that respondent holds an apparently completely unexercised privilege to practice medicine in New York.[2]
Accordingly, the order of the Appellate Division should be affirmed, with costs.

. In a reply affidavit on the motion before Supreme Court, appellant cited to McLenithan v Bennington Community Health Plan (223 AD2d 777, Iv dismissed 88 NY2d 1017) without articulating in any way that he was invoking CPLR 302 (a) (1), the "transaction of business” long-arm provision relied upon in that case. Thus, it is highly questionable whether appellant raised jurisdiction under CPLR 302 (a) (1) before Supreme Court, thereby preserving the issue for our review. In any event, this argument is not helpful to appellant. This provision of the long-arm statute extends jurisdiction to one who "transacts any business within the state or contracts anywhere to supply goods or services in the state” (CPLR 302 [a] [1]). As hereinafter discussed, there is no showing that respondent transacted any business within New York or that he had a contract to provide services within New York. Even if we were to agree with the apparent holding of McLenithan that the entry into a contract with a New York HMO, wherein mutual obligations were undertaken for the referral to and treatment by an out-of-State physician, constituted the transaction of business in New York State, there is no evidence whatsoever of any such contract in this case.

. Not before us is the question whether a referral/fee arrangement creating mutual obligations would constitute an interstate business activity or give rise to jurisdiction under a different long-arm provision (cf., McLenithan v Bennington Community Health Plan, 223 AD2d 777, supra) because there is absolutely no evidence of such an arrangement here. Indeed, the complete absence of record evidence of any such relationship between respondent and the New York HMO undermines the dissent’s characterization of the referral practice as a "managed care commercial enterprise” (dissenting opn, at 601).