**Roger JUSTUS, Plaintiff,**

v.

**TOYO KENSETSU KOHKI CO., LTD. and Bansho Co., Ltd., Defendants.**

**Nos. 199–CV–1277FJSDRH, 198–CV–1778FJSDRH.**

United States District Court, N.D. New York.

Oct. 24, 2002.

Larkin, Axelrod, Trachte & Tetenbaum, LLP (James A. Burke, Esq., of counsel), Newburgh, NY, for Plaintiff.

McNamee, Lochner, Titus & Williams, P.C. (Scott A. Barbour, Esq., of Counsel), Albany, NY, Lawyers for Defendant Toyo Kensetsu Kohki Co., Ltd.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, Chief Judge.

## I. INTRODUCTION

By complaint dated August 13, 1999, Plaintiff commenced this diversity action against Defendant Toyo Kensetsu Kohki Co., Ltd. ("Defendant Toyo") and Defendant Bansho Co., Ltd. ("Bansho")[1] alleging strict products liability, negligent design, and breach of warranty for injuries sustained while operating a "rebar" cutting machine.[2] Presently before the Court is Defendant Toyo's renewed motion for summary judgment asserting only lack of personal jurisdiction. The Court heard oral argument in support of, and in opposition to, Defendant's motion on September 27, 2002, and reserved decision at that time. The following constitutes the Court's determination of the pending motion.

## II. BACKGROUND

In August 1996, Plaintiff Roger Justus was employed by Defendant Miron Building Products, Inc. ("Miron"), in Kingston, New York. On August 19, 1996, Plaintiff sustained "severe and serious" injuries to his right hand while operating a rebar cutting machine. Defendant Toyo, a Japanese corporation, manufactures the machine at issue in the instant case, the Toyo Reinforcing Bar Cutting Machine, Model No. C–32. Defendant Bansho, a Japanese corporation, purchased machines from Defendant Toyo for resale to Defendant Prestress Supply, Inc. ("Prestress"), a Florida corporation. Defendant Prestress, in turn, sold the machines to Defendant Miron, a New York corporation.

Defendant Toyo initially moved for summary judgment on June 20, 2001, asserting that the Court lacks personal jurisdiction over Defendant Toyo. Plaintiff cross-moved for additional discovery with re-

1. On the basis of the record, it appears that Defendant Bansho remains without counsel. By Memorandum–Decision and Order dated March 29, 2002, the Court directed Defendant Bansho to cause counsel to file a Notice of Appearance with the Clerk of the Court within thirty days and warned that failure to do so would cause the Court to entertain a motion for default judgment against Defendant Bansho. Mail sent to Defendant Bansho has been returned undeliverable. See Dkt. No. 65. As of this date, Defendant Bansho has not caused counsel to file a Notice of Appearance. Accordingly, the Court directs Plaintiff to enter default against Defendant Bansho and, thereafter, to move for entry of a default judgment.

2. By complaint dated November 18, 1998, Plaintiff commenced an action against Defendant Prestress, claiming negligent design and manufacture, strict products liability, and breach of warranty for injuries sustained while operating a "rebar" cutting machine. Defendant Prestress, in turn, filed a third-party complaint against Defendant Miron on December 12, 1998. By Order dated December 7, 1999, the Court consolidated all actions for all purposes. Plaintiff's action against Defendant Toyo and Defendant Bansho was deemed the "lead case," and the action against Defendant Prestress and Defendant Miron was deemed the "member case."

spect to the financial records of Defendant Toyo. By Memorandum–Decision and Order dated March 29, 2002 (the "March 29 MDO"), the Court denied Defendant Toyo's motion without prejudice and with leave to renew. The Court also granted Plaintiff's cross-motion for additional discovery and ordered Defendant Toyo to disclose and make available financial data including its total revenue and revenue from interstate and international commerce for the years 1997 through 2000. On June 26, 2002, Defendant Toyo renewed its motion for summary judgment, again asserting that the Court lacks personal jurisdiction.

The sole issue before the Court is whether Defendant Toyo is amenable to personal jurisdiction pursuant to N.Y. C.P.L.R § 302(a)(3)(ii), the New York "long-arm" statute. Specifically, the narrow question before the Court on this motion is whether Defendant derived "substantial revenue from ... international commerce." There are three sub-issues the Court must address to resolve this question: (1) whether the relevant period of time for assessing "substantial revenue" is limited to the year in which the complaint was filed; (2) whether Defendant's revenues from international commerce were "substantial" within the meaning of section 302(a)(3)(ii) during the relevant period of time; and (3) if the Court concludes that Defendant is amenable to personal jurisdiction under section 302(a)(3)(ii), whether the exercise of jurisdiction is consistent with due process.

### III. DISCUSSION

#### A. Standard

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The ultimate inquiry is whether a reasonable jury could find for the non-moving party based on the evidence presented, the legitimate inferences drawn from that evidence in favor of the non-moving party, and the applicable burden of proof. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

#### B. Personal Jurisdiction

Plaintiff commenced this action in the Northern District of New York asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332. In diversity cases, personal jurisdiction is determined in accordance with the law of the forum state, here the law of New York. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 784 (2d Cir.1999). Plaintiff maintains that personal jurisdiction may be obtained over Defendant Toyo on the basis of section 302(a)(3)(ii) of the New York "long-arm" statute, which provides in relevant part:

Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

. . . . .

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

. . . . .

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; ...

To assert personal jurisdiction under N.Y. C.P.L.R. § 302(a)(3)(ii), Plaintiff must establish five elements: (1) that Defendant Toyo committed a tortious act without New York, (2) that the cause of action arises from that act, (3) that the act caused an injury within New York, (4) that Defendant Toyo expected or reasonably should have expected the act to have consequences within New York, and (5) that Defendant Toyo derived substantial revenues from interstate or international commerce. *See LaMarca v. Pak–Mor Mfg. Co.*, 95 N.Y.2d 210, 214, 713 N.Y.S.2d 304, 735 N.E.2d 883 (2000); *Ingraham v. Carroll*, 90 N.Y.2d 592, 597–98, 665 N.Y.S.2d 10, 687 N.E.2d 1293 (1997).

In its March 29 MDO, the Court held that the first three elements were satisfied and that Plaintiff had introduced sufficient evidence to avoid summary judgment with respect to the fourth element. The Court withheld judgment on the fifth element, *i.e.*, whether Defendant Toyo derived substantial revenues from interstate or international commerce, noting that the Court lacked sufficient information to make an informed decision. Having now received additional information and briefing and having held oral argument with respect to the remaining issues, the Court will address the fifth element of the long-arm analysis and the due process analysis.

*1. Relevant period of time for assessing substantial revenue.*

Defendant relies on *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194 (2d Cir.1990) ("Ball II"), and *Bank of California v. Smith Barney, Inc.*, No. 89–CV–551, 1997 WL 736529 (N.D.N.Y. Oct. 31, 1997), for the proposition that the year in which the case was commenced is the only period relevant to the substantial revenue inquiry.[3] The issue in Ball II was whether the defendant was amenable to personal jurisdiction under section 302(a)(3)(i), which provides for personal jurisdiction over an entity that " 'derives substantial revenue from goods used or consumed or services rendered, in the state . . . .' " *Ball II*, 902 F.2d at 199 n. 5 (quoting N.Y. Civ. Prac. L. & R. § 302(a)(3)(i) (McKinney 1972)). The core of the Second Circuit's holding was that the district court correctly concluded that the plaintiff had not established that the defendant derived substantial revenue from New York sources. *See id.* at 200. The Second Circuit also noted with approval the district court's ruling that the year the complaint was filed was the proper point in time for evaluating substantial revenue. *See id.* at 199. However, the dispute at the district court level was not over the length of the period to be considered in assessing substantial revenue but whether the court should generally focus on the time of the alleged injury or the time that the complaint was filed. *See Ball v. Metallurgie Hoboken–Overpelt, S.A.*, No. 87–CV–191, 1989 WL 87418, *12 (N.D.N.Y. July 31, 1989) ("*Ball I*") (alleged injury occurred in 1982, at which time defendant had no sales in United States; in contrast, when complaint was filed in 1987, defendant had substantial sales in the United States); *see also Bank of California*, 1997 WL 736529, at *5 n. 5 (citing *Ball II* for the proposition that the jurisdictional analysis should generally fo-

---

**3.** In its decision on Defendant Toyo's initial motion for summary judgment, the Court indicated that the year in which the complaint was filed is the relevant year for determining substantiality of revenue. *See* March 29 MDO at 9 ("[T]he relevant revenues for examination are those the defendant derived in the year the complaint was originally filed."). Defen-

dant argues that this constitutes law of the case. However, the issue before the Court was whether the inquiry should focus generally on the time of the alleged tortious act or the time that the complaint was filed. The Court did not address or decide the question of what period of time to consider.

**220**

cus on the time that the action was commenced, rather than the time of the alleged injury).

In support of its argument, Defendant Toyo notes that the *Ball I* court only entertained financial data from the year in which the complaint was filed. *See Ball I,* 1989 WL 87418 at*14. However, that appears to have been the only data presented to the court. *See id.* (plaintiff relied on affidavit evidence regarding revenues in 1987, the year the complaint was filed).[4] Indeed, other courts applying section 302(a)(3)(ii) have considered a period of years in analyzing the substantial revenue requirement. *See Barricade Books, Inc. v. Langberg,* No. 95 CIV. 8906, 2000 WL 1863764, *6 (S.D.N.Y. Dec. 19, 2000) (considering the defendant's revenues over three-year period); *Ronar, Inc. v. Wallace,* 649 F.Supp. 310, 317 (S.D.N.Y.1986) (considering the defendant's revenues over four-year period); *see also Pariente v. Scott Meredith Literary Agency, Inc.,* No. 90 Civ. 0547, 1991 WL 19857, *5 (S.D.N.Y. Feb. 11, 1991); *Schleich v. Blumenfeld Sport Net Co.,* No. CIV–82–546E, 1988 WL 27576, *1 (W.D.N.Y. Mar. 18, 1988).

■ The Court is persuaded that the better approach is to consider a period of years to determine whether Defendant Toyo derived "substantial revenue" from

international commerce. Contrary to Defendant's assertions, nothing in the case law suggests that the Court *must* limit itself to the year in which the complaint was filed. Indeed, analyzing revenue over a period of years yields a fairer and more accurate representation of a defendant's financial position; if the Court only examines revenue from a single year, a defendant may avoid or be subject to jurisdiction based on a single aberrant financial result. The facts in the instant case provide a good example: Defendant Toyo's international revenue during the 1999–2000 fiscal year, *i.e.,* when the complaint was filed, was substantially lower than in any of the preceding three fiscal years. In isolation, Defendant Toyo's 1999–2000 fiscal year results are misleading when viewed in the overall context of Defendant Toyo's financial performance. Accordingly, the Court will consider Defendant Toyo's financial data for fiscal years 1996 through 1999.[5]

### 2. Whether Defendant Toyo derived substantial revenue from international or interstate commerce.

To establish personal jurisdiction over Defendant Toyo under section 302(a)(3)(ii), Plaintiff must show that Defendant Toyo derived "substantial revenues" from either

4. On a related point, Defendant Toyo argues at some length that the portion of its international revenue attributable to commerce with the United States is very small. Plaintiff counters that the requisite connection to New York is addressed in the first prong of section 302(a)(3)(ii). *See Ingraham,* 90 N.Y.2d at 598–99, 665 N.Y.S.2d at 12–13, 687 N.E.2d at 1295–96; *accord Vecchio v. S & T Mfg. Co.,* 601 F.Supp. 55, 57 (E.D.N.Y.1984) (citation omitted). Accordingly, while Defendant Toyo's argument may have some rhetorical value, the law is clear that substantial revenue for the purposes of section 302(a)(3)(ii) need not derive from sources in New York or even the United States. *Compare Ball I,* 1989 WL 87418 at *12 (must show that substantial revenue was derived from New York sources

under section 302(a)(3)(i)), *with Broadcasting, Rights Int'l Corp. v. Societe du Tour de France, S.A.R.L.,* 675 F.Supp. 1439, 1445 (S.D.N.Y. 1987) (citing *Allen v. Auto Specialties Mfg. Co.,* 45 A.D.2d 331, 357 N.Y.S.2d 547, 550 (3rd Dep't 1974)) ("[S]ection 302(a)(3)(ii) does not require that the substantial revenue from international commerce be linked to New York or the United States.").

5. Defendant Toyo's allegedly tortious acts occurred between 1981 and 1984. *See* March 29 MDO at 10. The Court thus notes that the period of years that the Court will consider does not encompass the period in which the allegedly tortious acts took place.

international or interstate commerce. The "substantial revenue" prong is intended to preclude the exercise of personal jurisdiction over non-domiciliaries " 'whose business operations are of a local character.' " *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 29 (2d Cir.1997) (quotation and citations omitted).

Courts applying section 302(a)(3)(ii) have looked to both the absolute amount and the percentage of a defendant's interstate income in determining whether the income satisfies the "substantiality" requirement. *See Barricade Books*, 2000 WL 1863764, at *6; *Vecchio*, 601 F.Supp. at 57. Recognizing the difficulty of identifying an exact dollar or percentage sufficient to satisfy the "substantiality" requirement, relevant authority counsels a case-by-case determination with particular emphasis on the "overall nature of the defendant's business and the extent to which [the defendant] can fairly be expected to defend lawsuits in foreign forums." *Ronar*, 649 F.Supp. at 317 (citations omitted).

■ As discussed above, Defendant Toyo argues that the only relevant year is 1999, the year in which the complaint was filed. In the fiscal year encompassing the date that this action was commenced, Defendant Toyo's international revenues were $ 797,059.75, amounting to 2.7 % of its business. Plaintiff, on the other hand, asserts the following revenue figures for 1996 through 2000, based on information provided by Defendant Toyo: [6]

| Year | International Revenue | Percentage of Total |
|------|---------------------|---------------------|
| '96–'97 | $ 3,599,727.74 | 8.77 % |
| '97–'98 | $ 2,547,019.75 | 9.23 % |
| '98–'99 | $ 1,004,384.60 | 4.3 % |
| '99–'00 | $ 797,059.75 | 2.7 % |
| *Average* [7] | *$ 1,987,047.96* | *6.25 %* |

6. Defendant Toyo does not dispute these figures.

While it is clear that Defendant Toyo's international revenues were declining during the relevant period, it is equally clear that Defendant Toyo derived significant revenue from international commerce, both in absolute dollar amount and as a percentage of total revenue. *Cf. United Res.1988–I Drilling & Completion Program, L.P. v. Avalon Exploration, Inc.*, 1994 WL 9676, *4 (S.D.N.Y. Jan. 10, 1994) (international revenue of approximately five percent of defendant's total revenue based on transactions amounting to $2,000,000 sufficient to exercise jurisdiction under section 302(a)(3)(ii)). Viewing the record as a whole to assess the overall nature of Defendant Toyo's business, the Court cannot hold, as a matter of law, that Defendant Toyo's business is so local in character that it cannot be expected to defend lawsuits in foreign fora. Accordingly, the Court finds that Defendant Toyo derived substantial revenue from international commerce during the relevant period for purposes of the New York long-arm statute.

### 3. Whether the exercise of personal jurisdiction over Defendant Toyo comports with due process.

■ In addition to satisfying the requirements of New York's long-arm statute, Plaintiff must also establish that the exercise of personal jurisdiction over Defendant Toyo would not offend due process considerations under the United States Constitution. In its March 29 MDO, the Court held that Defendant Toyo had purposefully availed itself of doing business in New York. *See* March 29 MDO at 5–8. The Court further noted, without deciding,

7. At least one court has looked to average revenue statistics when analyzing section 302(a)(3)(ii)'s substantial revenue requirement. *See Schleich*, 1988 WL 27576, at *1.

that the factors for assessing the reasonableness "weigh heavily in favor of exercising jurisdiction over Defendant Toyo." March 29 MDO at 11 n. 7. Having reviewed the parties' submissions and having considered the parties' oral arguments, the Court finds no reason to deviate from its prior analysis. Accordingly, the Court finds that the exercise of personal jurisdiction under section 302(a)(3)(ii) comports with the due process requirements of the federal constitution.[8]

## C. Certification for Appeal

■ Defendant Toyo requests that the Court certify for immediate appeal the question of the appropriate time frame to consider in assessing section 302(a)(3)(ii)'s substantial revenue requirement. A district court may certify an order for immediate appeal where the court is of the opinion that "such order involves a controlling question of law as to which there is substantial ground for difference of opinion and ... immediate appeal from the order may materially advance the ultimate termination of the litigation ...." 28 U.S.C. § 1292(b); *see Klinghoffer v. S.N.C. Achille Lauro Ed Altri–Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 23–25 (2d Cir. 1990). The Second Circuit has held that "a question of law is clearly 'controlling' if reversal of the district court's order would terminate the action." *Klinghoffer*, 921 F.2d at 24 (citation omitted). Under this standard, the Court is of the opinion that the instant Order involves a controlling issue of law. Specifically, if the Court were only to consider Defendant Toyo's international revenue in the year in which the complaint was filed, the Court would be inclined to dismiss Defendant Toyo

from the action for want of personal jurisdiction. It is thus also clear that resolution of this question in Defendant Toyo's favor would materially advance termination of the litigation.

However, while the question of the appropriate time frame to consider in analyzing section 302(a)(3)(ii)'s substantial revenue requirement appears to be a question of first impression, there is no indication in the case law that the Court must look only to the year in which the complaint was filed. The Court is thus of the opinion that there is no substantial ground for difference of opinion regarding this question of law.

■ The Court reiterates that the focus of section 302(a)(3)(ii)'s substantial revenue requirement is to assess the "overall nature of the defendant's business and the extent to which [the defendant] can fairly be expected to defend lawsuits in foreign forums." *Ronar*, 649 F.Supp. at 317 (citations omitted). The Court finds that limiting its inquiry to the year in which the complaint was filed is at odds with this purpose. Accordingly, the Court denies Defendant Toyo's request that the Court certify for immediate appeal the question of the appropriate time frame to consider in assessing section 302(a)(3)(ii)'s substantial revenue requirement.

## IV. CONCLUSION

After carefully considering the file in this matter, the parties' submissions and oral arguments, and the applicable law, and for the reasons stated herein, the Court hereby

---

8. Notably, "New York has not extended the jurisdictional reach to the fullest extent possible under the federal constitution." *Broad. Rights Int'l Corp.*, 675 F.Supp. at 1445 (citing *Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965)).

**ORDERS** that Defendant Toyo's renewed motion for summary judgment is **DENIED;** and the Court further

**ORDERS** that Defendant Toyo's request to certify this Order for immediate appeal is **DENIED;** and the Court further

**ORDERS** that Plaintiff enter default against Defendant Bansho with the Clerk of the Court within thirty days of this Order and move the Court for default judgment within thirty days of entry of default.

**IT IS SO ORDERED.**