Lawrence G. TRAVER, Sr. Plaintiff,

v.

OFFICINE MECCANICHE TOSHCI SPA, Defendant.

No. 1:02–CV–214.

United States District Court, N.D. New York.

Dec. 5, 2002.

Cade & Saunders, P.C., Albany, NY (Steven Connelly, Kyran D. Nigro, of counsel), for plaintiff.

Boeggeman, George, Hodges & Corde, P.C., Albany, NY (Lisa Rolle, George Hodges, of Counsel), for defendant.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, Chief Judge.

### I. INTRODUCTION

Plaintiff's complaint asserts the following six causes of action: (1) negligence, (2) negligent design, (3) negligent manufacture, (4) failure to warn, (5) breach of warranty, and (6) strict products liability. Plaintiff seeks damages in the amount of $10,000,000 on each of his claims, for a total of $60,000,000. This Court's jurisdiction is premised upon the diversity of the citizenship of the parties. Plaintiff is a citizen of New York, and Defendant is incorporated in and has it principal place of business in Italy.

Presently before the Court is Defendant's motion to dismiss the complaint based upon (1) lack of personal jurisdiction and (2) the doctrine of *forum non conveniens*. The Court heard oral argument in support of, and in opposition to, this motion on November 21, 2002, and reserved decision at that time. The following constitutes the Court's written determination with respect to the pending motion.

### II. BACKGROUND

According to Plaintiff's complaint, on or about March 30, 1999, he was an employee of American Tissue Corporation ("ATC") at its mill in Greenwich, New York. *See* Complaint at ¶ 5. While performing his duties at the mill, he was walking along the floor of the dump station of the Tissue Slitter Rewinder ("rewinder"), which Defendant designed, manufactured, and distributed. *See id.* at ¶¶ 6–7. Plaintiff contends that, due to the negligent design, manufacture, and installation of the rewinder, lack of proper and necessary safety equipment, safety devices, warning and alarm systems, shut-off systems and other safety mechanisms and safeguards, and non-compliance with OSHA requirements, his foot went into a depression in the machine causing him to fall forward and trapping his right hand and arm in the rewinder. *See id.* at ¶ 8. As a result of this incident, Plaintiff claims that he suffered severe, debilitating and permanent injuries.

### III. DISCUSSION

#### A. Personal jurisdiction under New York's long-arm statute

"'When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant.'" *United Computer Capital Corp. v. Secure Prods., L.P.*, 218 F.Supp.2d 273, 277 (N.D.N.Y. 2002) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir.1999)). However, where "a court relies on pleadings and affidavits, rather than having a 'full blown evidentiary hearing,' the plaintiff need only make a *prima facie* showing that the court possesses personal jurisdiction over the defendant." *Id.* (citation omitted).

In the present case, Plaintiff relies upon New York's long-arm statute, N.Y.

C.P.L.R. § 302(a), as a basis for this Court's exercise of personal jurisdiction over Defendant.[1] Plaintiff claims that, although he has come forward with sufficient evidence to demonstrate that jurisdiction may exist under any of the five prongs of § 302(a), he needs further discovery to show that jurisdiction, in fact, does exist under at least one of these prongs. To the contrary, Defendant asserts that none of the bases for long-arm jurisdiction are present.

At oral argument, Plaintiff's counsel focused primarily upon § 302(a)(3)(ii) as a basis for long-arm jurisdiction. However, he also argued that personal jurisdiction was probable under § 302(a)(1) and possible under § 302(a)(2). The Court's review of the record demonstrates that Plaintiff has not produced any evidence to support a finding of personal jurisdiction under § 302(a)(2), § 302(a)(3)(i) or § 302(a)(4). Thus, the Court will address only § 302(a)(1) and § 302(a)(3)(ii).

### 1. Section 302(a)(1)—transacting business

Section 302(a)(1) states that "a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent ... [1] transacts any business within the state or [2] contracts anywhere to supply goods or services in

the state...." N.Y. C.P.L.R. § 302(a)(1) (emphasis added). "This subsection thus has two prongs, either of which can form a basis for the exercise of personal jurisdiction over a non-domiciliary." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 786 (2d Cir.1999) (citations omitted).

### a. Transaction of business prong of § 302(a)(1)

■■■ "[F]or a court to obtain personal jurisdiction over a party under the 'transaction of business' prong of § 302(a)(1), the party need not be physically present in the state at the time of service." *Id.* at 787 (citation omitted). Instead, " § 302(a)(1) extends the jurisdiction of New York state courts to any nonresident who has 'purposely availed [himself] of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws....' " *Id.* (quotation omitted). " '[A] "single transaction would be sufficient to fulfill this requirement," ' ..., so long as the relevant cause of action also arises from that transaction." *Id.* (citation and footnote omitted).

■■■ To determine whether a non-domiciliary has transacted business in New York within the meaning of § 302(a)(1), "the court must consider the totality of the circumstances surrounding the contract action." *Great Northern Ins. Co. v. Constab*

---

1. Pursuant to New York's long-arm statute, N.Y. C.P.L.R. § 302(a), "[a]s to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

    1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

    2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

    3. commits a tortious act without the state causing injury to a person or property with-

in the state, except as to a cause of action for defamation of character arising from the act, if he

      (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods or services rendered in the state; or

      (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

    4. owns, uses or possess any real property situated within the state."

N.Y. C.P.L.R. § 302(a).

*Polymer–Chemie GMBH & Co.,* No. 5:01–CV–882, 2002 WL 31084727, *4 (N.D.N.Y. Sept.17, 2002) (citation omitted). In making this determination, the court may consider the following factors:

whether the defendant has an ongoing contractual relationship with a New York business; whether the contract was negotiated or executed in New York; whether the defendant visited New York to meet with the parties to the contract regarding performance thereof after the execution of the contract; and whether the contract required the defendant to send notices and payments into New York or otherwise perform in New York.

*Id.* (citation omitted).

■ Applying these factors, courts have found that "transaction of business" existed when "a foreign corporation used a New York distributor to ship substantial quantities of goods into the state, the sales of which were produced by means of solicitations and advertisements in the state." *See Bank Brussels Lambert,* 171 F.3d at 787 (citing *Singer v. Walker,* 15 N.Y.2d 443, 466–67, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965)). However, "[w]here a plaintiff's cause of action is based upon a contract, negotiation of the contractual terms by phone, fax or mail with the New York party is generally insufficient to support a finding of the transaction of business in New York." *United Computer Capital Corp.,* 218 F.Supp.2d at 278 (citation omitted); *see also Ferrante Equip. Co. v.*

*Lasker–Goldman Corp.,* 26 N.Y.2d 280, 284, 309 N.Y.S.2d 913, 258 N.E.2d 202 (1970) (finding that there was no transaction of business when the defendant was a non-domiciliary who conducted his personal business activities out of state, had no office, bank account or telephone listings in New York, and neither solicited business in the state nor "entered th[e] State in connection with his dealings"); *C–Life Group Ltd. v. Generra Co.,* 235 A.D.2d 267, 267, 652 N.Y.S.2d 41 (1st Dep't 1997) (finding that parties' initial 45–minute meeting in New York, which was clearly exploratory in nature and which led to nothing more than a proposal that was itself the subject of further negotiations over the phone, by mail, and in meetings outside New York, did not constitute the transaction of business within the meaning of § 302(a)(1)).

Defendant contends that § 302(a)(1) is inapplicable because there is no evidence that it transacted any business within New York to supply goods or services in New York.[2] To support this argument, Defendant notes that the invoice for the rewinder that it sold to ATC specifically stated that the rewinder would be shipped to and located in Canada. Moreover, Defendant contends that at the time of the sale it had no knowledge that ATC planned to ship the rewinder to New York.

In response, Plaintiff argues that Defendant's own exhibits demonstrate that it knew that it was contracting with a New York corporation to supply the rewinder.[3]

---

**2.** In its memorandum of law, Defendant combines the two prongs of § 302(a)(1) into a single prong. However, as the case law makes clear, these two prongs are separate and distinct, and either one can form the basis for exercising personal jurisdiction over a non-domiciliary. *See Bank Brussels Lambert,* 171 F.3d at 786.

**3.** Plaintiff also asserts that Defendant's "argument that the invoice to American Tissue

states that the machine would be shipped to and *'used in Canada'* is at best specious. Nowhere in any of the documentation provided in support of the motion does American Tissue indicate that the machine would be used in Canada. In fact, the Exhibit 'D' correspondence indicates that the subject rewinder should be shipped to a packaging company in Ontario, Canada. Obviously, the parties anticipated that the machine would be moved from Canada and used in the United States;

Moreover, Plaintiff has submitted the affidavit of Brian S. Merchant, a former employee of ATC, stating that at least one of Defendant's representatives traveled to ATC's Greenwich, New York, plant to train workers on the operation of the rewinder. Thus, Plaintiff argues that, although he has not had the opportunity to conduct discovery and is unable to determine the extent of Defendant's business contacts with New York, this visit alone demonstrates Defendant's purposeful availment of the benefits of the laws of New York.[4]

Not withstanding Plaintiff's contentions, there is little evidence in the record to support a finding of personal jurisdiction under the "transacting business" prong of § 302(a)(1). Furthermore, there is no evidence of an ongoing contractual relationship between Defendant and ATC and no evidence to support a finding that the contract for the sale of the rewinder was negotiated or executed in New York.[5] Although Defendant did send some letters to ATC in New York and one of Defendant's representatives visited ATC's Greenwich, New York, plant to train employees to use the rewinder, the reason for this New York visit is not entirely clear. If, as Defendant claims, it contracted with ATC to ship the rewinder to Canada for use in a Canadian plant, then clearly Defendant did not "purposely avail" itself of the privilege of conducting activities within New York. Rather, it may have been ATC's actions, i.e., the decision to relocate the rewinder, not Defendant's, that caused Defendant to be in New York for a short period of time.

Given the lack of factual information in the record, the Court cannot determine whether § 302(a)(1)'s "transaction of business" prong supports an exercise of personal jurisdiction over Defendant. Therefore, the Court will provide Plaintiff with an opportunity to conduct limited discovery on this issue. To that end, the Court instructs Plaintiff to serve a set of interrogatories on Defendant's counsel, in both English and Italian, seeking information relevant to the issue of whether Defendant transacted business in New York within the meaning of § 302(a)(1).

### b. Supplying goods or services prong of § 302(a)(1)

The second prong of § 302(a)(1), extending jurisdiction to defendants who "contract anywhere to supply goods or services in the state," was added to " 'ease the plight of New York residents seeking to

---

and more particularly in New York where the purchaser was located." *See* Plaintiff's Memorandum of Law at 4–5.

The Court finds that Plaintiff's argument is somewhat disingenuous. Although Exhibit "D" does state that the rewinder is to be shipped to a packaging company, "Atlantic Packaging," Plaintiff ignores Exhibit "E," which addresses ATC's problems with financing because "the equipment in question **is to be located in Canada**." *See* Defendant's Exhibit "E" (emphasis added). Although the machine eventually was shipped to New York, there is nothing in the record to indicate how or why this occurred. Thus, what little information the Court has supports a finding that, **at least initially**, the parties contracted for the rewinder to be shipped to and used in Canada.

4. Defendant's only response to this argument is that it was obligated under the contract to send a representative to ATC to train its employees. Nonetheless, Defendant maintains that when it entered into the contract with ATC, the rewinder was to be located in Canada and it was only because ATC changed its mind about the location of the rewinder that Defendant was required to come to New York.

5. The documents in the record are letters concerning the shipment of the rewinder, which logically must have occurred after the contract was signed. Moreover, the only evidence that Defendant visited New York to meet with anyone from ATC regarding the performance of the contract occurred after its execution for the purpose of training workers.

obtain jurisdiction over those outside its borders who may be deemed virtually or constructively to do business in this state.' " *Bank Brussels Lambert*, 171 F.3d at 789 (quoting *Waldorf Associates, Inc. v. Neville*, 141 Misc.2d 150, 533 N.Y.S.2d 182, 185 (1988)). "This provision captures cases where there are minimal contacts in New York, and, for example, a contract is made elsewhere for goods to be delivered or services to be performed in New York." *Id.* (citation omitted). "Thus, even if a defendant never enters the state to negotiate one of these contracts, to complete performance or for any other reason, the second prong of § 302(a)(1) can provide long-arm jurisdiction over a defendant who has minimal contacts with the state and who has entered a contract anywhere to supply goods or services in the state." *Id.* (citation omitted).

> In applying this provision,
>
> courts may consider whether the purchase orders and other documents provide for shipment to New York; whether the defendant collected New York sales tax in connection with the transaction; whether the defendant solicited the contract in New York; whether the defendant entered New York for purposes of performing the contract; and any other factor showing that defendant voluntarily and purposefully availed itself of the privilege of transacting business in New York.

*Great Northern Ins. Co.*, 2002 WL 31084727, at *4 (citation omitted).

Based upon the evidence presently before the Court, the Court is unable to determine whether the "supplying goods or services" prong of § 302(a)(1) provides a basis for exercising personal jurisdiction over Defendant. Although there is no indication that ATC and Defendant contracted to ship the rewinder to New York

or that Defendant solicited the contract in New York, one of Defendant's employees did come to New York to train ATC's employees to use the rewinder. However, it is not clear whether this visit was necessitated by a unilateral decision on the part of ATC to relocate the rewinder in New York. Therefore, the Court instructs Plaintiff that, as part of the set of interrogatories authorized above, he may seek information regarding the issue of whether Defendant contracted to supply goods or services to ATC in New York.

### 2. Section 302(a)(3)(ii)—reasonable expectation and substantial revenue

■ To confer jurisdiction under § 302(a)(ii), the plaintiff must establish five elements: (1) the "defendant committed a tortious act outside the State," (2) "the cause of action arises from that act," (3) "the act caused injury to a person or property within the State," (4) the "defendant expected or should reasonably have expected the act to have consequences in the State," and (5) the "defendant derived substantial revenue from interstate or international commerce." *LaMarca v. Pak–Mor Mfg. Co.*, 95 N.Y.2d 210, 214, 713 N.Y.S.2d 304, 735 N.E.2d 883 (2000).[6]

■ The fourth element of this test is satisfied when " '[t]he nonresident tortfeasor ... expect[s], or ha[s] reason to expect, that his or her tortious activity in another State will have *direct* consequences in New York.' " *Id.* (quoting *Ingraham v. Carroll*, 90 N.Y.2d 592, 598, 665 N.Y.S.2d 10, 687 N.E.2d 1293). This element " 'is intended to ensure some link between a defendant and New York State to make it reasonable to require a defendant to come to New York to answer for tortious conduct committed elsewhere.' "

---

**6.** There does not appear to be any dispute that the first three elements are satisfied. Therefore, the Court will address only the fourth and fifth elements.

*Id.* at 215, 713 N.Y.S.2d 304, 735 N.E.2d 883 (quoting *Ingraham v. Carroll,* 90 N.Y.2d, at 598, 665 N.Y.S.2d 10, 687 N.E.2d 1293). Although "the defendant need not foresee the specific event that produced the alleged injury[,][h]e [must] reasonably foresee that any defect in its product would have direct consequences within the State." *Id.* (citations omitted).

■■■ " 'The test of whether a defendant expects or should reasonably expect his act to have consequences within the State is an objective rather than a subjective one.' " *Great Northern Ins. Co.,* 2002 WL 31084727, at *3 (quoting *Kernan,* 175 F.3d at 241 (quoting *Allen v. Auto Specialties Mfg. Co.,* 45 A.D.2d 331, 357 N.Y.S.2d 547, 550 (3d Dep't 1974))). In order to avoid conflict with federal due process limits, New York courts have held that "the simple likelihood or foreseeability 'that a defendant's product will find its way into New York does not satisfy this element, and that purposeful availment of the benefits of the laws of New York such that the defendant may reasonably anticipate being haled into New York court is required.' " *Id.* (quotation omitted); *see also Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano County,* 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 298, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Cortlandt Racquet Club, Inc. v. Oy Saunatec, Ltd.,* 978 F.Supp. 520, 523 (S.D.N.Y.1997) ("foreseeability must be coupled with a purposeful act invoking the benefits and protections of New York law" (citations and footnote

omitted)); *Schaadt v. T.W. Kutter, Inc.,* 169 A.D.2d 969, 970, 564 N.Y.S.2d 865 (3d Dep't 1991).

■■■ The fifth element—substantial revenue from interstate or international commerce— "requires no direct contact with New York State." *Ingraham v. Carroll,* 90 N.Y.2d 592, 598, 665 N.Y.S.2d 10, 687 N.E.2d 1293 (1997) (citation omitted); *see Broad. Rights Int'l Corp. v. Societe du Tour de France, S.A.R.L.,* 675 F.Supp. 1439, 1445 (S.D.N.Y.1987) (citing *Allen v. Auto Specialties Mfg. Co.,* 45 A.D.2d 331, 357 N.Y.S.2d 547, 550 (3rd Dep't 1974)) ("[S]ection 302(a)(3)(ii) does not require that the substantial revenue from international commerce be linked to New York or the United States.").[7] Rather, this prong is intended to preclude the exercise of personal jurisdiction over non-domiciliaries " 'whose business operations are of a local character.' " *Bensusan Restaurant Corp. v. King,* 126 F.3d 25, 29 (2d Cir.1997) (quotation and citations omitted); *see Ingraham,* 90 N.Y.2d at 599, 665 N.Y.S.2d 10, 687 N.E.2d 1293 (quotation and citations omitted).

■■■ "New York courts have looked to both the absolute amount and percentage of a defendant's interstate income in determining whether that income is substantial." *Barricade Books, Inc. v. Langberg,* No. 95 CIV. 8906, 2000 WL 1863764, *6 (S.D.N.Y. Dec.19, 2000) (citations omitted); *Vecchio v. S & T Mfg. Co.,* 601 F.Supp. 55, 57 (E.D.N.Y.1984). Moreover, although as between the time that the complaint was filed and the time of the alleged tortious act, it is the former time that is relevant in determining whether the defendant meets

---

7. At oral argument, Defendant's counsel stated several times that the issue was whether Defendant derived substantial revenue from transactions within New York. However, as the case law makes clear, under § 302(a)(3)(ii), as long as it is reasonably fore-seeable that Defendant's acts would have caused injury in New York and that Defendant derives substantial revenue from international commerce, it is not necessary that Defendant derive **any** of its international revenue from transactions in New York.

the "substantial revenue" prong of § 302(a)(3)(ii), a court should consider a period of years around the time that the complaint was filed, rather than only that one particular year, in determining whether the defendant derives substantial revenues from interstate or international commerce. *See Barricade Books*, 2000 WL 1863764, at *5 (considering the defendant's revenues over three-year period); *Ronar, Inc. v. Wallace*, 649 F.Supp. 310, 317 (S.D.N.Y.1986) (considering the defendant's revenues over four-year period); *see also Pariente v. Scott Meredith Literary Agency, Inc.*, No. 90 Civ. 0547, 1991 WL 19857, *5 (S.D.N.Y. Feb. 11, 1991); *Schleich v. Blumenfeld Sport Net Co.*, No. CIV–82–546E, 1988 WL 27576, *1 (W.D.N.Y. Mar.18, 1988). Finally, recognizing the difficulty of identifying an exact dollar or percentage sufficient to satisfy the "substantiality" requirement, relevant authority counsels a case-by-case determination with particular emphasis on "the overall nature of the defendant's business and the extent to which [the defendant] can fairly be expected to defend lawsuits in foreign forums." *Ronar*, 649 F.Supp. at 317 (citations omitted).

Other than as previously stated, Plaintiff asserts that he is not in a position at this stage of the litigation to determine the extent of Defendant's business relationships within New York. Again, given the lack of factual information in the record, the Court is unable to state with certainty that Defendant could have or should have expected its acts to have consequences in New York.[8] Therefore, the Court instructs Defendant to provide Plaintiff with its financial statements, including, but not limited to, a break down of its revenue figures into the amount that it derived from com-

merce within Italy and the amount that it derived from commerce outside Italy for the fiscal years 1998 through the present. Moreover, the Court instructs Plaintiff that he may include in the set of interrogatories he serves upon Defendant's counsel seeking information related to personal jurisdiction under § 302(a)(1) questions relevant to the terms of the contract between ATC and Defendant regarding the sale and installation of the rewinder, as well as any training that Defendant was to provide to ATC employees.

In view of the above, the Court denies Defendant's motion to dismiss for lack of personal jurisdiction without prejudice and with leave to renew.

**B.  Doctrine of *forum non conveniens***

As an alternative ground for its motion, Defendant argues that the Court should dismiss the complaint pursuant to the doctrine of *forum non conveniens*. Although the Court cannot at this juncture determine whether or not it may exercise personal jurisdiction over Defendant under New York's long-arm statute, the Court will, nonetheless, address this alternative ground for relief, assuming for purposes of this discussion that Defendant is subject to the jurisdiction of this Court.

The doctrine of *forum non conveniens* "finds its roots in the inherent power of the courts 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Monegasque De Reassurances S.A.M. v. Nak Naftogaz Of Ukraine*, Nos. 01–7947, 01–9153, 2002 WL 31528664, * 7 (2d Cir. Nov.15, 2002) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)). Thus, "'a court may resist impo-

---

8. One very important issue that needs to be resolved before the Court can make this determination is exactly what the parties contracted to do. Moreover, there is no evidence from which the Court can determine whether, at the time the complaint was filed, Defendant derived substantial revenue from international commerce.

sition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute.'" *Id.* (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)).

As a preliminary matter, in a *forum non conveniens* analysis, the court must determine "what deference is owed a plaintiff's choice of forum." *Id.* at *9 (citing *Iragorri v. United Techs. Corp.,* 274 F.3d 65, 73 (2d Cir.2001) (*en banc*)). "Ordinarily a strong favorable presumption is applied to that choice." *DiRienzo v. Philip Servs. Corp.,* 294 F.3d 21, 28 (2d Cir. 2002) (citation omitted). "'[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *Id.* (quotation omitted). Thus, the Second Circuit has held that "a court should begin with the assumption that a plaintiff's choice of forum will stand unless the defendant can demonstrate that reasons exist to afford it less deference." *Id.* (citation omitted).

In the present case, the Court must apply a strong presumption in favor of Plaintiff's choice of forum because he is a resident of this District and his injury occurred in this District. Moreover, Defendant has not come forward with any evidence to support a finding that the Court should afford Plaintiff's choice less deference than normal. Accordingly, the Court concludes that unless Defendant demonstrates that the other factors relevant to the *forum non conveniens* analysis weigh heavily in favor of Defendant, Plaintiff's choice of forum will stand.

Next, the court must determine whether there is an alternative forum. *Monegasque,* 2002 WL 31528664, at * 9 (citation omitted). Unless such a forum exists, the court may not grant a *forum non conveniens* motion. *See id.* (citation omitted). "An alternative forum is ordinarily adequate if the defendants are amenable to service of process there and the forum permits litigation of the subject matter of the dispute." *Id.* (citation omitted).

Defendant asserts that Italy is an adequate alternative forum and that it is amenable to process in Italy. Although Plaintiff makes the bald assertion that Italy is not an adequate forum, he offers no evidence to support this claim. The Court, therefore, finds that Italy is an adequate alternative forum for this litigation.

Having concluded that an alternative forum exists, the Court must now balance two sets of factors to determine whether the case should be tried in this forum or in the alternative forum. *See id.* at *10 (citation omitted). One set of factors—the private interest factors—pertains to the convenience of the parties -

"the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."

*Id.* (quotation omitted).

In applying these factors, "'the court should focus on the precise issues that are likely to be actually tried, taking into consideration the convenience of the parties and the availability of witnesses and the evidence needed for the trial of these issues.'" *Id.* (quoting *Iragorri,* 274 F.3d at 74).

The other set of factors—the public factors—"include the administrative difficulties associated with court congestion; the imposition of jury duty upon those whose community bears no relationship to the litigation; the local interest in resolving local disputes; and the problems implicated in the application of foreign law."

*Id.* at *11 (citing *Gilbert,* 330 U.S. at 508–09, 67 S.Ct. 839).

In the present case, Defendant contends that the private factors weigh in favor of the alternative forum. First, it notes that the proof necessary to this case is located in Italy, where this Court cannot compel access. Moreover, Defendant contends that the vast majority of the potential witnesses to the allegedly defective condition reside in Italy beyond this Court's subpoena power. Furthermore, even if this Court could compel these witnesses to appear here, Defendant argues that such appearances would be unduly burdensome, if not impossible, for individuals residing abroad, particularly because their testimony would need to be translated. Finally, Defendant asserts that the documentary evidence is likely to be in Italian and would need to be translated into English if the case were tried in this forum.

With respect to the public factors, Defendant asserts that the administrative difficulties associated with trying a case in a forum thousands of miles away from the witnesses and the evidence are obvious. Defendant explains further that this case poses procedural complexities due to the difficulty of obtaining access to relevant documentary evidence and/or the difficulty of compelling the testimony of witnesses, whom this Court has no power to subpoena.

Moreover, Defendant contends that Italy's overwhelming interest in this litigation is undeniable. In this regard, Defendant argues that Plaintiff's claim arises out of the design and manufacture of a rewinder that was designed and manufactured in Italy under the requirements of Italian law. Thus, Defendant claims that Italian courts should be charged with the adjudication of this dispute because it raises important legal issues that are most certainly the concern of Italy to resolve.

After reviewing the record and listening to counsel's arguments, the Court concludes that Defendant has not met its burden to demonstrate that either the private or public factors weigh heavily in favor of dismissing this case on the grounds of *forum non conveniens.* Defendant has not explained how transporting documents from Italy, and even translating those documents, would be oppressive or vexatious. Given the ease with which documents can be transported around the world today, the Court sees no reason to accord this element much weight. *See DiRienzo,* 294 F.3d at 30 (citing *Itoba Ltd. v. LEP Group PLC,* 930 F.Supp. 36, 44 (D.Conn.1996) ("To the extent documents exist in England, advances in transportation and communication accord this issue less weight.")).

Moreover, the location of potential witnesses does not weigh in favor of either side because wherever the trial is held it will be inconvenient for one side. While not discounting the fact that it would be inconvenient for Defendant's agents and employees to travel to New York, the fact that Defendant apparently does business all over the world weighs against finding that this would be an undue burden on Defendant. Moreover, Plaintiff is an individual who does not do business around the world, and, thus, it would be more inconvenient for him to travel to Italy. Thus, the Court finds that this factor is at best neutral and, otherwise, favors Plaintiff.

The most important concern is the unavailability of process to compel unwilling third-party witnesses, if there are any, to appear in this Court. However, despite the preference for live testimony, courts have recognized the availability of letters rogatory as relevant in deciding whether a plaintiff's chosen forum is inconvenient. *See DiRienzo,* 294 F.3d at 30 (citations

omitted). Thus, the parties in this case may, if they choose, use videotape depositions, obtained through letters rogatory. In this manner, the jury will have the opportunity to assess the credibility of any Italian witnesses. Thus, the Court concludes that this factor weighs in favor of Plaintiff.

Finally, to the extent that it is necessary, a view of the premises would be easier if the trial were held in this forum because the ATC mill, where the rewinder is located, is in this District. However, because it is unlikely that a view of the premises will be necessary, the Court finds that this factor is neutral.

Having reviewed the private factors in their totality, the Court concludes that the balance of these factors weighs in favor of Plaintiff or, at the very least, they do not strongly favor Defendant. Therefore, Plaintiff's choice of forum should not be disturbed on this basis alone.

With respect to the public factors, although this Court has a heavy docket, trying this case would not be overly burdensome. Moreover, there is no evidence to support a finding that Italian courts are any less congested. In addition, even if the Court will have to apply Italian law, it will also have to apply New York law. Finally, although Defendant argues to the contrary, New York has a relationship to this litigation—the rewinder is located in New York and Plaintiff, a New York resident, was injured in New York. Therefore, having reviewed the public factors in their totality, the Court concludes that these factors weigh in Plaintiff's favor.

Accordingly, because Defendant has failed to establish that either the public or private factors tip significantly in its favor, the Court denies Defendant's motion to dismiss based upon the doctrine of *forum non conveniens*.

## IV. CONCLUSION

After carefully considering the file in this matter, the parties' submissions and oral arguments, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendant's motion to dismiss the complaint for lack of personal jurisdiction is **DENIED WITHOUT PREJUDICE AND WITH LEAVE TO RENEW**; and the Court further

**ORDERS** that Defendant is to provide Plaintiff with its financial statements, including its total revenue figures, broken down into revenue derived from sales in Italy and revenue derived from sales outside of Italy (all figures to be in American dollars), for the fiscal years 1998 to the present within **sixty days** of the date of this Order; and the Court further

**ORDERS** that Plaintiff shall serve a set of interrogatories, in English and Italian, upon Defendant's counsel seeking information relevant to the elements of personal jurisdiction under § 302(a)(1) and § 302(a)(3)(ii) within **sixty days** of the date of this Order; and the Court further

**ORDERS** that Defendant shall serve Plaintiff's counsel with answers to the interrogatories, in English and Italian, within sixty days of receipt of those interrogatories; and the Court further

**ORDERS** that, if any problems arise concerning either the scheduling or substance of this discovery, the parties are to contact Magistrate Judge Treece's chambers for resolution; and the Court further

**ORDERS** that if, once this discovery has been completed, Defendant still wants to move to dismiss the complaint for lack of personal jurisdiction, it may file and serve such a motion within **thirty days** of providing Plaintiff with the answers to the interrogatories and, when doing so, it

should set the return date of that motion for the Court's next regularly scheduled motion calendar, which is not less than **twenty-eight calendar days** after the filing of the motion;[9] and the Court further

**ORDERS** that if Defendant renews its motion to dismiss based upon personal jurisdiction, Plaintiff shall file and serve his response to that motion not less than **fourteen calendar days** prior to the return date of the motion; and the Court further

**ORDERS** that Defendant may file and serve a reply in further support of its motion not less than **seven calendar days** prior to the return date of the motion; and the Court further

**ORDERS** that if Defendant decides not to renew its motion to dismiss for lack of personal jurisdiction it shall notify the Court and opposing counsel in writing of this decision within **thirty days** of providing Plaintiff with the answers to the interrogatories; and the Court further

**ORDERS** that Defendant's motion to dismiss the complaint based upon the doctrine of *forum non conveniens* is **DENIED.**

**IT IS SO ORDERED.**

---

9. By virtue of this Order, Defendant's renewed motion for dismissal based upon a lack of personal jurisdiction is exempted from the filing and service requirements of Local Rule 7.1(b)(1).